James Paul BURNS, Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, and Robert Cousins, Warden, Ellis Unit, Texas Department of Corrections, Respondents-Appellees.

No. 78–3109.

United States Court of Appeals, Fifth Circuit.

Sept. 24, 1980.

Richard J. Clarkson, Beaumont, Tex., for petitioner-appellant.

Joel Berger, Legal Defense Fund and Educational Fund, Inc., Jack Greenberg, James M. Nabrit, III, John Charles Boger, Deborah Fins, New York City, Anthony G. Amsterdam, Stanford University Law School, Stanford, Cal., amicus curiae.

Mark White, Atty. Gen., Anita Ashton, Asst. Atty. Gen., Austin, Tex., for respondents-appellees.

Carol S. Vance, Dist. Atty., Houston, Tex., amicus curiae.

Before COLEMAN, Chief Judge, BROWN, AINSWORTH, GODBOLD, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RAN-

DALL, TATE, SAM D. JOHNSON and THOMAS A. CLARK, Circuit Judges *.

GEE, Circuit Judge:

As the Supreme Court has observed, *Adams v. Texas*, —— U.S. ——, ——, 100 S.Ct. 2521, 2525, n.2, 65 L.Ed.2d 581 (1980), we heard oral argument en banc in this matter on January 8, 1980, to reconsider the opinion and decision of our panel reported at 592 F.2d 1297 (5th Cir.). That opinion held, in summary, that section 12.31(b) of the Texas Penal Code, which disqualifies jurors unwilling to swear that a mandatory penalty of death or life imprisonment will not "affect" their deliberations on factual issues, lays down a disqualification standard impermissibly broader than the Court's *Witherspoon* decision. *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). We have withheld decision en banc until the Court spoke in *Adams*.

It has now done so. Its opinion holds, as did our panel, that the Texas law in question may not be viewed as a basis for disqualification independent of *Witherspoon*. So holding, it disapproved the disqualification under that law of several veniremen who were unable to state positively that the potential death penalty would not affect them or who admitted on *voir dire* that the possibility of its imposition would affect their deliberations by making them, in essence, take their duties as jurors with unusual seriousness or would involve them emotionally.[1] The Court, having noted these veniremen's answers, then goes forward in a telling passage to say:

But neither nervousness, emotional involvement, nor inability to deny or confirm any effect whatsoever is equivalent to an unwillingness or an inability on the part of the jurors to follow the court's instructions and obey their oaths, regardless of their feelings about the death penalty. The grounds for excluding these jurors were consequently insufficient under the Sixth and Fourteenth Amendments. Nor in our view would the Constitution permit the exclusion of jurors from the penalty phase of a Texas murder trial if they aver that they will honestly find the facts and answer the questions in the affirmative if they are convinced beyond reasonable doubt, but not otherwise, yet who frankly concede that the prospects of the death penalty may affect what their honest judgment of the facts will be or what they may deem to be a reasonable doubt.

—— U.S. at ——, 100 S.Ct. at 2529.

The Court's observations confirm the view of our panel, with which we here agree en banc, that the state's questioning of members of this venire, such as Mrs. Doss, simply did not go far enough to disqualify them. It is true that she presents a stronger initial case for disqualification than the veniremen considered in *Adams*: three times in succession Mrs. Doss stated that she did not believe in the death penalty, following with an affirmation that it would affect her deliberations on any issue of fact in the case.[2] These are strong expressions indeed, but they fall short of un-

---

* Judge Goldberg was a member of the en banc court under 28 U.S.C.A. § 46(c) and participated in the oral argument of the case en banc. Since that time he has taken senior status and therefore does not participate in this decision. Judge Jerre S. Williams did not participate in the consideration or decision in this case. The case was taken under submission by the court en banc on January 8, 1980.

1. In the only *voir dire* passage quoted, Venireman Forrest Jenson testified: "Well, I think it probably would [affect my deliberations] because afterall [sic], you're talking about a man's life here. You definitely don't want to take it lightly." —— U.S. at —— n.7, 100 S.Ct. at 2528 n.7.

2. The colloquy was as follows:

Q: [By the prosecutor] All right. Let me ask you this question, a sentence of life imprisonment or death is mandatory on conviction of a capital penalty case, you understand that?

A: Yes, sir, I understand it.

Q: All right. And this is a capital felony case.

A: I don't believe in it.

Q: Ma'am?

A: I do not believe in it.

Q: Let me go into it then. You told me just then that you did not believe in death?

A: That's right.

Q: All right. Then will the mandatory penalty of death or imprisonment for life affect your deliberation on any issue of fact,

equivocal avowals disqualifying her under either aspect of *Witherspoon's* two-pronged test, reiterated by the Court in *Adams*:

> [N]othing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt*.

—— U.S. at ——, 100 S.Ct. at 2525 (quoting *Witherspoon v. Illinois*, 391 U.S. 510, 522–23 n.21, 88 S.Ct. 1770, 1777 n.21, 20 L.Ed.2d 776 (emphasis in original)).

As to its prong concerning the imposition of the death penalty, she did not testify that she would automatically vote against it, regardless of what the evidence might show. As to its guilt-or-innocence prong, she did not "make unmistakably clear" that her attitude toward the death penalty would prevent her from making an impartial decision as to guilt. These are the two talismans; and had her answers unmistakably and plainly contravened either, she might properly have been excused.

But her answers did not do so. As to the penalty aspect of the test, she merely expressed disagreement with it. As to its guilt-or-innocence prong—if guilt or innocence be viewed as an issue of ultimate fact—she testified merely that the presence of the penalty would "affect" her deliberations, with little or no indication of how profound that effect would be. This was not enough. Further questioning, which

was denied, might well have either revealed that she could lay her personal views aside, follow the court's instructions, and do her duty as a citizen or made unmistakably clear that she could not or would not do so. What her answers might have been will never be known. She was therefore prematurely excused, with the showing required by *Witherspoon* for her dismissal incomplete. Since she was, Burns' death sentence cannot be carried out. The panel's disposition of the case was therefore correct.

REVERSED and REMANDED.

REAVLEY, Circuit Judge, with whom FAY, Circuit Judge, joins, specially concurring:

My concern is to keep the *Witherspoon* rule discrete from juror qualification to decide guilt or innocence. The state is entitled to exclude anyone who, for whatever reason, cannot be impartial in deliberating upon that question. The presiding judge should be entitled to resolve doubts about a prospective juror's ability to be impartial on defendant's guilt or innocence by excusing for cause.

If a panel member discloses on voir dire that he has read in the press of the crime and the defendant's participation, the defense attorney is entitled to have that person excused if the presiding judge is not satisfied that the panel member can and will lay aside what has been read and will not allow it to affect his deliberations in any respect or to any degree. His qualifications would not be assured by the facile assent to "follow the law as given by the court" and "be true to the juror's oath."

The rule should be no different where the panel member objects to capital punishment. We should be careful not to write as if there is a special rule now which raises

which what you just told me it will, in other words the mandatory penalty of death or imprisonment for life will affect the deliberations on any issue of fact in this case, is that correct?

A: That's right.

MR. GREEN: All right. Judge, we ask this juror be excused.

MR. ABALOS: I think we should ask some further questions about this matter.

THE COURT: I don't know what you could ask. You challenge her for cause, is that correct?

MR. WILLIAMS: That is the magic term phrase and she answered it the way you are not supposed to.

THE COURT: Ma'am, I will excuse you. You are challenged for cause, you will not be on the jury. You are dismissed from jury service. Thank you very much for your attendance.

the burden upon the prosecutor to "make unmistakably clear" the partiality of the prospective juror. I believe the point is a proper one despite the language quoted in the court's opinion from the *Witherspoon* footnote 21 as well as the repetition of that quotation by the Chief Justice in *Lockett v. Ohio*, 438 U.S. 586, 595, 98 S.Ct. 2954 at 2960, 57 L.Ed.2d 973 (1978).

Read entirely, the *Witherspoon* opinion does not change the rule as to juror qualification to decide guilt or innocence. The Court expressly refused to reverse the conviction of Witherspoon even though half of the panel had been excused simply because they held conscientious scruples or opposition to capital punishment. 391 U.S. at 516–518, 88 S.Ct. at 1774–1775. I assume Mr. Justice Rehnquist is correct when he says in his *Adams* dissent: "No one would suggest, however, that jurors could not be excused for cause if they declined to swear that the possibility of capital punishment would not affect their determination of the defendant's guilt or innocence." —— U.S. at ——, 100 S.Ct. at 2531.

I concur in the judgment because *Adams* prevents the imposition of the death penalty by a jury from which persons were excluded solely because their deliberation in the penalty phase could be affected by their views on capital punishment.