Charles Sylvester BELL,
Petitioner-Appellant,

v.

John C. WATKINS, Commissioner, Mississippi Department of Corrections, et al., Respondents-Appellees.

No. 81–4358.

United States Court of Appeals,
Fifth Circuit.

Dec. 6, 1982.

As Amended on Denial of Rehearing and Rehearing En Banc Feb. 28, 1983.

---

Freeland & Gafford, James L. Robertson (court appointed), Oxford, Miss., Cupit & Maxey, John L. Maxey, II, Jackson, Miss., for petitioner-appellant.

William A. Allain, Atty. Gen. of Miss., Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, Miss., for respondents-appellees.

Appeal from the United States District Court for the Southern District of Mississippi.

Before BROWN, WISDOM and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Charles Sylvester Bell was convicted of capital murder in a Mississippi state court in 1977 and sentenced to death. On appeal from the federal district court's denial of habeas corpus relief, 28 U.S.C. § 2254 (1976), the defendant contends:

(1) that the instructions given the jury during the guilt phase of his trial were constitutionally inadequate;

(2) that the exclusion of jurors who expressed conscientious objections to the death penalty violated the rule of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968);

(3) that he was denied effective assistance of counsel;

(4) that testimony elicited from his accomplice was unconstitutionally obtained;

(5) that the Mississippi capital sentencing procedure used at the time of his conviction and sentence was unconstitutional;

(6) that the instructions given to the jury during the sentencing phase of his trial were constitutionally inadequate;

(7) that the District Court for the Northern District of Mississippi abused its discretion in transferring the case to the Southern District;

(8) that the district court improperly refused to grant the defendant an enlargement of time or to appoint counsel to represent him.

For the reasons set forth below, we affirm that portion of the district court's judgment rejecting the defendant's challenges to the constitutionality of his conviction, but, as required by our recent decision in *Jordan v. Watkins,* 681 F.2d 1067 (5th Cir.), *clarified sub nom. Jordan v. Thigpen,* 688 F.2d 395 (5th Cir.1982), we hold that the state trial court's sentencing instructions were constitutionally inadequate. We therefore reverse the federal district court's judgment to the contrary.

## I. PROCEDURAL AND FACTUAL BACKGROUND.

On June 26, 1976, the twenty-one year old night attendant at a service station in Hattiesburg, Mississippi, Danny C. Haden, was robbed at gunpoint and kidnapped by the defendant, Charles Sylvester Bell, and three other individuals: Bobby McFarland, Luther York and Caesar Posey. The robbery was initially McFarland's idea. Upon reaching a secluded area outside of Hattiesburg, McFarland, York and Bell took Haden into the woods while Posey waited in the car. McFarland shot the victim in the back of the neck, decapitating him. There was conflicting testimony at trial as to whether Bell or York fired a shotgun into the victim's back. Both Posey and Bell pleaded with McFarland not to kill Haden before he was taken into the woods and executed.

In March 1977, Bell and Posey were indicted for capital murder. York was indicted in November of that year. McFarland was killed in a burglary a few days after the murder and was never indicted.

On March 11, 1977, Paul Richard Lambert was appointed to represent Bell. On March 16, the state trial court denied the defendant's pretrial motion to suppress a confession and request for a psychiatric examination. On March 21, 1977, the defendant was tried before a jury in a bifurcated proceeding pursuant to standards set forth in *Jackson v. State,* 337 So.2d 1242 (Miss.

1976). The jury found the defendant guilty on March 23 and sentenced him to death.

The Mississippi Supreme Court affirmed Bell's conviction and sentence by a 5–4 vote. *Bell v. State,* 360 So.2d 1206 (Miss.1978), *cert. denied,* 440 U.S. 950, 99 S.Ct. 1433, 59 L.Ed.2d 640 (1979). After the United States Supreme Court denied certiorari, the Mississippi Supreme Court denied the defendant leave to file a petition for a writ of error coram nobis or habeas corpus. The defendant filed a habeas corpus petition in the United States District Court for the Northern District of Mississippi. That court, on its own motion, transferred the case to the Southern District of Mississippi.

In the Southern District, the State moved to dismiss on the grounds that the defendant had failed to exhaust state remedies for some of his claims. The district court ordered the defendant to seek postconviction relief in the state courts but retained jurisdiction of the petition. After the Mississippi Supreme Court denied Bell's request for a hearing, the district court considered his claims on the merits, rejecting all of them.

## II. INSTRUCTIONS DURING THE GUILT PHASE OF TRIAL.

Bell challenges the trial court's refusal to instruct the jury on the lesser included offenses of manslaughter and simple, or noncapital, murder, as well as the court's failure to define the elements of armed robbery and kidnapping. At trial, Bell's counsel requested a manslaughter instruction [1] which was refused, but counsel did not request an instruction on simple murder or on the elements of the felonies underlying the capital murder charge. The judge informed the jury that they should find the defendant guilty of capital murder if they found beyond a reasonable doubt that "the defendant was engaged in the criminal act of armed robbery or kidnapping." [2] He further explained that "any person aiding, abetting, counseling or procuring the commission of a felony is guilty as a principal." [3]

The State, relying on *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), argues that the defendant waived his right to object to these jury instructions, as well as to the instructions given during the sentencing phase of the trial, *infra,* through his failure to make a contemporaneous objection as required by Mississippi Supreme Court Rule 42. In *Engle,* the state court had denied the defendant relief because of his failure to follow

1. The defense requested the following instruction:

 The Court instructs the jury that if you believe from the evidence beyond a reasonable doubt and a moral certainty that the defendant is guilty of manslaughter, the form of your verdict may be:

 "We the jury find the defendant guilty of manslaughter."

 Your verdict should be written on a separate sheet of paper.

 Trial Transcript at 715.

2. The full instruction was:

 The defendant, Charles Sylvester Bell, has been charged by an indictment with the crime of capital murder for having caused the death of D.C. Haden while committing armed robbery or kidnapping. If you find from the evidence in this case, beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with innocence, that the defendant was engaged in the criminal act of armed robbery or kidnapping, then you shall find the accused guilty of capital murder. If the State has failed to prove any one or more of these elements, beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with innocence, then you shall find the defendant not guilty of capital murder. Trial Transcript at 705.

3. The court also gave an instruction to the jury that they should find the defendant guilty of capital murder if:

 you believe from the evidence presented in this case beyond a reasonable doubt and to the exclusion of any other reasonable hypothesis consistent with innocence that the Defendant Charles Sylvester Bell, in Forrest County, Mississippi, on the 22nd day of June, 1976, did willfully, unlawfully, and feloniously, and of his malice aforethought, kill and murder Danny Haden, a human being, while in the commission of the crime of armed robbery and kidnapping, then it is your sworn duty to find the defendant guilty as charged.

 Trial Transcript at 707.

the requisite procedures.[4] In Bell's case, the Mississippi Supreme Court itself raised the issue of the adequacy of the instructions given the jury and determined that they were not misleading. We are not barred from reviewing a claim by a state procedural rule when the state courts themselves have not followed the rule. *Burns v. Estelle,* 592 F.2d 1297 (5th Cir.1979), *aff'd en banc,* 626 F.2d 396 (5th Cir.1980); *see also Wainright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).[5]

▮▮▮ The due process clause of the fourteenth amendment requires a trial judge to give a lesser included offense instruction to the jury "if the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit him of the greater." *Beck v. Alabama,* 447 U.S. 625, 635, 100 S.Ct. 2382, 2388, 65 L.Ed.2d 392 (1980) (quoting *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995–1996, 36 L.Ed.2d 844 (1973)). In a capital case a lesser included offense instruction is an especially important procedural safeguard:

> For when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify conviction of a capital offense—the failure to give the jury the

"third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.

*Beck,* 447 U.S. at 637, 100 S.Ct. at 2389. There is no due process violation, however, unless there is some evidence to support an instruction on the lesser included offense. *Hopper v. Evans,* —— U.S. ——, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982);[6] *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976).

Bell points out that the State successfully requested an instruction on "aiding and abetting" apparently because there was evidence that Bell never fired a shot. While Posey testified that Bell had told him that he himself had shot the victim, Posey did not see the incident and Bell expressly denied shooting anyone. Bell maintains that if the evidence supports "aiding and abetting," it also supports a verdict of simple murder.

▮▮▮ The trial judge's instructions to the jury, however, correctly stated Mississippi law which apparently allows a defendant to be convicted of capital murder if someone is killed during the course of a robbery in which he was participating. Miss.Code Ann. § 97–3–19(2)(e) (1982 Supp.).[7] In Mississippi, *no* murder commit-

---

**4.** In *Engle,* the Supreme Court did not hold that a federal habeas petitioner's failure to follow state procedures is an absolute bar to federal habeas relief, but rather that the federal courts would entertain such a petitioner's claim only if he was able to demonstrate cause and prejudice.

**5.** The Mississippi Supreme Court has expressly waived Rule 42's contemporaneous objection requirement in other capital cases. *See e.g., Culberson v. State,* 379 So.2d 499 (Miss.1980), *cert. denied,* 449 U.S. 1103, 101 S.Ct. 903, 66 L.Ed.2d 831 (1981).

**6.** In fact, the Court states in *Evans* that "due process requires that the lesser included offense instruction be given *only* when the evidence warrants such an instruction." —— U.S. at ——, 102 S.Ct. at 2053.

**7.** Section 97–3–19 provides as follows:
(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:

(a) When done with deliberate design to effect the death of the person killed, or of any human being;

(b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual;

(c) When done without any design to effect death by any person engaged in the commission of any felony other than rape, kidnapping, burglary, arson or robbery, or in any attempt to commit such felonies.

(2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:

(a) Murder which is perpetrated by killing a peace officer or fireman while such officer or fireman is acting in his official capacity or by reason of an act performed in his official capacity, and with knowledge that the victim was a peace officer or fireman. For purposes of this paragraph, the term "peace officer"

ted during the course of a robbery can be simple murder. *Id.* Since Bell testified to the robbery, any murder committed had to be capital. Similarly, manslaughter is killing without malice, either in the course of a felony *other* than rape, burglary, arson or *robbery* or in the heat of passion. Miss. Code Ann. §§ 97–3–27, 97–3–35 (1972). Since there was no evidence of "heat of passion," and the robbery element was uncontested, the evidence could not support a verdict of manslaughter without capital murder.[8]

The Alabama statute in question in *Beck* required a finding of intent to kill before a defendant could be convicted of capital murder. Since there was conflicting evidence on the issue of intent at trial, the State conceded that there was evidence to support a lesser included offense of "simple" felony murder. In contrast, any murder committed during the course of a robbery is capital under Mississippi law. Therefore, the trial court's refusal to give a lesser included offense instruction at Bell's request was proper, since there was no evidence to support the lesser charge.[9]

■ Bell also contends that the writ must be granted because of the trial judge's failure to define the elements of armed robbery and kidnapping. The jury had to find that the murder was committed while the defendant was engaged in the commission of another felony—in this case kidnap-

means sheriffs of counties and their deputies, constables, marshals and policemen of cities and towns, game wardens, parole officers, a judge, prosecuting attorney or any other court official, agents of the alcoholic beverage control division of the state tax commission, agents of the bureau of narcotics, personnel of the Mississippi Highway patrol, and the superintendent and his deputies, guards, officers and other employees of the Mississippi State Penitentiary;

(b) Murder which is perpetrated by a person who is under sentence of life imprisonment;

(c) Murder which is perpetrated by use or detonation of a bomb or explosive device;

(d) Murder which is perpetrated by any person who has been offered or has received anything of value for committing the murder, and all parties to such a murder, are guilty as principals;

(e) When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson or robbery, or in any attempt to commit such felonies;

(f) Murder which is perpetrated by the killing of any elected official of a county, municipal, state or federal government with knowledge that the victim was such public official.

8. Bell makes three other unpersuasive "logical" arguments: (1) if the trial court had instructed on noncapital murder, and the jury had convicted, no one could rationally dispute that the evidence supported the conviction; (2) if the petitioner had pleaded guilty to manslaughter, the evidence would sustain his guilt on any collateral attack; and (3) the plea bargains and reduced charges of Posey and York demonstrate that the State thought the evidence supported a lesser charge.

The first two arguments are seductive but misleading. They obviously apply, by defini-

tion, to any "lesser included offense" and make superfluous the requirement that there be some evidence of the lesser offense. *See Evans, supra.* The requirement in *Beck* that there be evidence which would permit a jury rationally to convict a defendant of the greater offense while acquitting him of the lesser disposes of all three arguments, as well as the argument discussed in the text.

Furthermore, the State's decision to let Posey and York plead guilty to a lesser charge was an exercise in prosecutorial discretion not normally subject to our review. *Cf. Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). As the Supreme Court stated in *Gregg v. Georgia,* 428 U.S. 153, 199, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976), in its response to a challenge to the discretionary phases inherent in the processing of any murder case: "Nothing in any of our cases suggests that the [state's] decision to afford an individual mercy violates the Constitution." The prosecutor's decision in this case was understandable, at least concerning Posey, who was not at the scene of the murder and who did not have Bell's prior criminal background. The prosecutor explained that he had been more lenient with York because he firmly believed that Bell, not York, had fired the second shot.

9. While any murder committed during the course of a robbery is capital murder under Mississippi law, we note that the United States Supreme Court has held that under the eighth amendment a defendant may not be put to death where the State has proved neither the defendant's actual participation in the killing itself nor his intent to commit the murder. *Enmund v. Florida,* —— U.S. ——, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) (plurality opinion). *Infra.*

ping and/or armed robbery—in order to convict the defendant of capital murder, but the jury was offered no explanation of the underlying felony.

While the failure to define the elements of the crime may be plain error, *United States v. Williams,* 463 F.2d 958 (D.C.Cir. 1972), we agree with the district court that the error in this case was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Bell's admission that he committed the elements of kidnapping and robbery leads us to the conclusion that the error must be viewed as harmless, since no rational jury could have acquitted him of kidnapping or robbery on the evidence presented.

### III. THE WITHERSPOON ISSUE.

Bell contends that the exclusion of four jurors for opposition to the death penalty violated the rule established in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). According to *Witherspoon,* potential jurors with reservations about capital punishment may be excluded from jury service *only* if they make unmistakeably clear that:

> (1) they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt.*

391 U.S. at 522–23 n. 21, 88 S.Ct. at 1777 n. 21 (emphasis in original). More recently, the Court has stated that the mere "inability to deny or confirm any effect whatsoever" is not a sufficient ground for excluding a juror for cause. *Adams v. Texas,* 448 U.S. 38, 50, 100 S.Ct. 2521, 2529, 65 L.Ed.2d 581 (1980).

■ Once again the State maintains that we may not reach this issue because the defendant failed to raise it in state court. *Engle v. Isaac,* —— U.S. ——, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). When the State originally presented this argument to the district court, the court sent the defendant back to the state courts to exhaust his state remedies. In denying the defendant's Motion for Leave to File a Petition for Writ of Error Coram Nobis and/or Writ of Habeas Corpus, the Mississippi Supreme Court did not discuss the *Witherspoon* issue specifically. It stated only that "[t]he Court . . . has carefully and meticulously considered each objection of the petitioner's complaint" and is "of the opinion that the petitioner . . . received a fair trial by the jury of his peers in conformity with the . . . Constitution of our United States." *Bell v. Watkins,* 381 So.2d 118, 119 (Miss.1980). This language suggests that the court considered the merits of the issues raised, rather than denying the petitioner relief because of a procedural default. We are not barred from reviewing the petitioner's federal habeas claim where the state supreme court has considered and rejected the claim on the merits, no matter how brief the state court's treatment of the claim may have been. *Miller v. Estelle,* 677 F.2d 1080, 1084 (5th Cir.1981); *Thomas v. Blackburn,* 623 F.2d 383 (5th Cir.1980), *cert. denied,* 450 U.S. 953, 101 S.Ct. 1413, 67 L.Ed.2d 380 (1981).

■ The most disturbing aspect of Bell's *Witherspoon* claim is the poor quality of the voir dire transcript. The voir dire proceedings were not transcribed at the time but merely tape recorded and many of the jurors' responses were inaudible.[10] Our review of the limited record available, however, convinces us that the exclusion of the four jurors did not violate the rule established in *Witherspoon.*

A comparison of the cases in which we have reversed for improper exclusion of jurors is helpful. In *Burns v. Estelle,* 592 F.2d

---

**10.** In Mississippi, the voir dire proceedings are not normally transcribed unless the parties so request. We have held that the State's failure to provide adequate records of the voir dire proceedings is not itself a constitutional violation. *Gray v. Lucas,* 677 F.2d 1086, 1097 (5th Cir.1982).

1297 (5th Cir.1979), *aff'd en banc,* 626 F.2d 396 (5th Cir.1980) (en banc), Mrs. Doss repeatedly expressed her disbelief in the death penalty, but the judge excluded her for cause merely because she stated that her beliefs would *affect* her decision. We were concerned that further questioning might well have revealed that she could have laid aside her views and obeyed the law. Similarly, in *Granviel v. Estelle,* 655 F.2d 673 (5th Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982), a juror stated that he did not "think" he could vote for the death penalty. In response to the question, "You just don't *feel* like you would be entitled to take another person's life in that fashion?", he stated that he could not. We held that the judge's questions had not elicited a response that demonstrated that the juror would automatically have voted against the death penalty regardless of the evidence. 655 F.2d at 677.

In contrast, the judge asked all of the right questions at Bell's trial. After Ms. Mattie Barron expressed her reservations about the death penalty the following exchange occurred:

> BY THE COURT: All right. As a member of the jury, each of you, and you, have already answered the questions directed to you by the Court and you have taken an oath that you would try this case upon two things, the law and the evidence. Now, my question is pinpointed to this. In this particular case, *if the evidence warrants the conviction or guilt of the accused, could you vote the death penalty?*
>
> BY PROSPECTIVE JUROR: (Inaudible).
>
> BY THE COURT: *You could not?*
>
> BY PROSPECTIVE JUROR: *No, sir,* I don't believe.

Voir Dire Transcript at 34 (emphasis added). The trial judge was even more thorough in his questioning of Ms. Mattie Bourn:

> BY PROSPECTIVE JUROR: I do. I don't believe in death penalty.
>
> BY HON. JON MARK WEATHERS: You don't believe in the death penalty.

Let me ask you this. You're being perfectly honest and I appreciate you doing that. Would you *automatically,* because of this religious or conscientious scruple, *feel like you would have to vote against the imposition of capital punishment in this case regardless of what the evidence shows you?* In other words, the evidence that the State puts on, because of this religious or conscientious scruple, prevent you—in other words, *there's no way you could return a death sentence in this case, regardless of what the testimony shows and the evidence shows.* Just be honest about it.

> BY PROSPECTIVE JUROR: I don't believe in death penalty.
>
> BY HON. JON MARK WEATHERS: Now, would your conscientious or religious scruple prevent you from making a fair and impartial decision as to this Defendant's guilt or innocence? It wouldn't affect you, would it? In other words, you could be fair about guilt or innocence if you didn't have to vote the death penalty.
>
> BY PROSPECTIVE JUROR: I believe I could be fair but I still don't believe in taking a life.
>
> BY HON. JON MARK WEATHERS: If the Court please, we would challenge her for cause.
>
> BY THE COURT: Let me direct a couple of questions to you. The Court earlier had asked you this question, and this is the specific question that will determine your qualification to serve in a case of this nature. I asked you did any one of you have any conscientious scruples against the infliction of the death penalty when the law authorizes it in proper cases and where the testimony or evidence warrants it. Now, you have indicated now that you did have some conscientious scruples or limitations in regard to the death penalty. Is that correct?
>
> (NO AUDIBLE RESPONSE.)
>
> BY THE COURT: Could you, nevertheless, follow the testimony of the witnesses and the instructions of the Court

and return a verdict of guilty although that verdict could result in the death penalty if you, being the judge of the weight and worth of the evidence, are convinced of the guilt of the Defendant and that the circumstance warrants such a verdict?

(NO AUDIBLE RESPONSE.)

BY THE COURT: I'll repeat that question for you. Could you, even though you expressed some limitation concerning the death penalty, could you follow the testimony of the witnesses and the instructions of the Court on the law and return a guilty verdict although that verdict could result in the death penalty, if you, being the judge of the weight and worth of the evidence, are convinced of the guilt of the Defendant and that the circumstances warrant such a verdict?

BY PROSPECTIVE JUROR: Well, if I believed he was guilty, I still wouldn't be in favor of the death penalty.

BY THE COURT: Even though the law does authorize the death penalty in certain cases, do you feel that if the facts in this case caused you to find the accused guilty, because of this feeling that you have do you feel like *that you could not, where the law authorized the death penalty and that the facts justify it, and the law, that you could not bring in a guilty verdict?*

BY PROSPECTIVE JUROR: *Within my heart I couldn't;* I've have to (inaudible)

Voir Dire Transcript at 24–26 (emphasis added).

We are satisfied from this review of the record, particularly in light of the trial judge's careful questioning of the jurors, that only those jurors whose scruples would have forced them automatically to vote against the death penalty were excluded.

## IV. THE EFFECTIVENESS OF COUNSEL.

■ The defendant claims that he was denied his sixth amendment right to effective assistance of counsel at both the guilt and sentencing phases of his trial. See *Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). We have recently summarized the standards governing claims of ineffective assistance in *Washington v. Watkins,* 655 F.2d 1346 (5th Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982). As we have stated on a number of occasions, a defendant is not entitled to "error-less counsel", but to "counsel reasonably likely to render and rendering reasonably effective assistance." *Washington,* 655 F.2d at 1355 (quoting *Herring v. Estelle,* 491 F.2d 125, 127 (5th Cir.1974)). *See also Fitzgerald v. Estelle,* 505 F.2d 1334 (5th Cir.1975) (en banc). The standard required of trial counsel is no higher in capital cases than in noncapital cases. *Washington* at 1356. While subsidiary findings made by the district court concerning basic historical facts are subject to our review under the clearly erroneous standard, Fed.R.Civ.P. 52(a), we must make an independent review of the district court's ultimate conclusion that counsel has been effective. *Id.* at 1354.

■ The first line of inquiry is whether counsel was reasonably likely to render reasonably effective assistance. Bell argues that his trial counsel was unqualified because he had never defended a criminal case all the way to a jury verdict and because he had only recently graduated from law school. The defendant states that these facts render his trial counsel incompetent as a matter of law, but he cites no authority for this novel proposition. He also points out that it is customary in Mississippi to appoint two lawyers to defend a capital case.

The district court was correct in rejecting the defendant's argument concerning his lawyer's competence. The court noted that Lambert had tried two cases and participated to a lesser degree in other cases while he was serving as an intern in the district attorney's office when he was in law school. After graduation, he had handled criminal cases for a "respected" law firm, although none of his cases had gone to trial. He had

also worked on a number of civil cases. Finally, he enlisted the help of two experienced criminal lawyers in preparing Bell's case. Although Mississippi courts may customarily appoint two lawyers in a capital case, the Constitution dictates no such requirement.

Concerning the question of whether counsel in fact rendered reasonably effective assistance, the defendant emphasizes three errors which allegedly deprived him of a fair trial. He refers to his lawyer's failure to interview prosecution and other witnesses before trial, to impeach the accomplice, Posey, adequately, and to request a jury instruction on simple murder or the definition of kidnapping and armed robbery.

■ Regarding the defendant's first point, we have imposed a duty on counsel to make an independent investigation of the facts and circumstances in the case. *Washington, supra,* 655 F.2d at 1355; *Rummel v. Estelle,* 590 F.2d 103, 104 (5th Cir.1979) (quoting *Davis v. Alabama,* 596 F.2d 1214, 1217 (5th Cir.1979), *vacated as moot,* 446 U.S. 903, 100 S.Ct. 1827, 64 L.Ed.2d 256 (1980)). This duty is not without limit, however, and we must take into account the totality of the circumstances in evaluating whether counsel has been effective. *Washington* at 1356. Bell's counsel interviewed six or seven witnesses from the prosecutor's list. Bell was highly uncooperative in providing his lawyer with a list of character witnesses.[11] He refused to allow Lambert to call his parents because his mother was an epileptic and he did not want her disturbed and because he was not on good terms with his stepfather. Since he was not from Mississippi, his acquaintances in the area were limited. The only people he knew at all well were his codefendants and a convicted rapist, none of whom would have been convincing character witnesses.

■ Furthermore, the defendant must demonstrate that his counsel's ineffectiveness has resulted in at least *some* degree of prejudice to his case. *Washington, supra* at 1362. Bell has failed to demonstrate that any of the witnesses not interviewed would have aided in his defense. He offered no evidence whatsoever at his habeas hearing as to what the nature of the testimony from the radiologist might have been. Neither has he offered any indication that Posey would have had anything helpful to say in an interview.

■ Secondly, Bell maintains that his lawyer failed to conduct an adequate cross-examination of Posey because he did not question him about his earlier statement that McFarland, not Bell, had informed him that Bell had killed Haden. The district court was justified in concluding that Bell's counsel had made a tactical decision not to confront Posey with his earlier statement, a decision that does not appear to have been unwise even in hindsight. *See Washington,* 655 F.2d at 1363–64. The statements are not necessarily inconsistent in that Posey could have heard of Bell's complicity in the murder from both sources. Had he said as much to the jury, his testimony would have been devastating. We note further that Lambert's cross-examination of Posey was fairly extensive, particularly his questioning of whether Bell had said that he himself had shot Haden or whether someone else had, and whether Posey may have made a deal with the prosecution and changed his testimony.

■ Finally, Lambert cannot be faulted for his failure to request a simple murder charge not supported by the evidence, *supra,* and his failure to request a definition of the underlying felony was harmless. *Supra.* Accordingly we hold that the defendant was not denied effective assistance of counsel during the guilt stage of his trial. Since we hold the defendant's sentence to be unconstitutional on other grounds, *infra,* we need not review the adequacy of the representation during the sentencing stage of the proceedings.

---

11. While Bell's failure to cooperate did not negate Lambert's duty to investigate, the scope of that duty was limited by Bell's lack of cooperation. *See Gray v. Lucas,* 677 F.2d 1086, 1094 (5th Cir.1982).

## V. CAESAR POSEY'S TESTIMONY.

Bell and Posey were indicted together, but Posey was never tried. As mentioned above, Posey testified at trial that Bell told him that he had shot the victim. This testimony differed from his prior written statements that McFarland had told him that the defendant shot the victim, although the statements are not necessarily inconsistent. After Bell's conviction and sentence were affirmed by the Mississippi Supreme Court, the State and Posey announced a plea bargain under which Posey would receive a life sentence. Bell infers from these facts that Posey's testimony was secured by means of a threat or a deal. He argues that his conviction should be reversed because the jury was never informed of the deal.

While reversal of a conviction may be in order when damaging testimony is secured by a secret deal, which may affect credibility, *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the defendant has produced no evidence of such a deal. In fact, testimony by Posey at both the habeas corpus hearing and at trial was firmly to the contrary. While we can understand Bell's suspicions, the defendant must rely on more than mere inference drawn from the circumstances of the trial in order to make out his claim. *See United States v. Crockett,* 534 F.2d 589, 603 (5th Cir.1976).

## VI. THE SENTENCING PROCEDURE.

Bell contends that the procedure under which he was sentenced was unconstitutional because (1) the Mississippi statute is a mandatory death penalty statute of the type held unconstitutional in *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); (2) the Mississippi Supreme Court's rewriting of the statute in *Jackson v. State,* 337 So.2d 1242 (Miss.1976), constituted a radical irregularity in the lawmaking process in violation of the defendant's fourteenth amendment right to due process; and (3) the sentencing instructions given to the jury marked a return to the "standardless sentencing" condemned in

*Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

Since the time Bell presented his appeal, we have decided *Jordan v. Watkins,* 681 F.2d 1067 (5th Cir.), *clarified sub nom. Jordan v. Thigpen,* 688 F.2d 395 (5th Cir.1982), which specifically addressed the questions raised by Bell's challenge to the *Jackson* procedure. In *Jordan* we noted that the Mississippi Supreme Court had carefully reviewed the legislative purposes behind the enactment of the capital murder provisions, Miss.Code Ann. § 97–3–21 (1982 Supp.), and the state court had concluded that the primary legislative intent had been to enact a constitutional capital murder statute in response to the United States Supreme Court decision in *Furman, supra,* rather than to require the death penalty for certain enumerated offenses. *Jackson,* 337 So.2d at 1251. We were satisfied that the Mississippi Supreme Court had not "attempt[ed] to evade consideration of a federal issue when it decided *Jackson v. State.*" 681 F.2d at 1080. We held, therefore, that the state court's construction of the statute "as permissive rather than mandatory and its promulgation of procedural rules [were] actions beyond this court's scope of review." *Id.*

We went on to hold, however, that the *Jackson* sentencing procedure, at least as applied in Jordan's case, did not pass constitutional muster because of its failure to provide "specific and detailed guidance" which would "channel the sentencer's discretion by 'clear and objective standards.'" *Godfrey v. Georgia,* 446 U.S. 420, 428, 100 S.Ct. 1759, 1764–1765, 64 L.Ed.2d 398 (1976). *See also Spivey v. Zant,* 661 F.2d 464, 470 (5th Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982); *Chenault v. Stynchcombe,* 581 F.2d 444 (5th Cir.1978). As the Supreme Court stated in *Gregg v. Georgia,* 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976):

[W]here discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.

The state supreme court held in *Jackson* that "proof beyond a reasonable doubt of the statutory elements of the capital offense with which the accused is charged . . . constitute[s] [a] sufficient circumstance to authorize imposition of the [death] penalty." 337 So.2d at 1246. We were concerned that

> [a]lthough the *Jackson* sentencing procedures require the jury to state unanimously in writing that "after weighing the mitigating circumstances and the aggravating circumstances one against the other . . . the mitigating circumstances do not outweigh the aggravating circumstances" before imposing the death penalty, the jury is not required to specify the aggravating circumstances that warranted capital punishment. Moreover, the Mississippi supreme court did not limit or define the number or nature of aggravating circumstances that may be considered by the jury in determining whether to sentence a defendant to death.

In our clarification of the *Jordan* opinion we distinguished the statutory scheme upheld by the Supreme Court in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), noting that in Texas, the jury is limited to consideration of the statutory aggravating circumstances, while in Mississippi

> unless the jury is instructed that the only aggravating circumstances that it is allowed to consider are the statutory elements of the offense with which the accused is charged, it could fairly read an instruction which tracks the language of that paragraph (as did an instruction in this case) to permit it to consider other unspecified aggravating circumstances

once it has found proof beyond a reasonable doubt of the statutory elements of the offense with which the accused is charged (and is therefore entitled to consider the death penalty). As stated in the panel opinion, there is nothing in the jury instruction based on this paragraph to prevent the jury from considering any number of potentially arbitrary and irrelevant unspecified factors. That flaw in the instruction was exacerbated in this case by the prosecutor's argument to the jury, quoted in the panel opinion, that "each of you have to determine what is an aggravating circumstance," a statement which the trial judge did nothing to correct. This is, indeed, the "standardless and unchanneled imposition of [the death penalty] in the uncontrolled discretion of a basically uninstructed jury." *Godfrey v. Georgia,* 446 U.S. 420, 428, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980).

*Thigpen, supra,* 688 F.2d at 397.

▮▮▮ The instructions given the jury during Bell's sentencing were even less adequate than those in the *Jordan* case.[12] The trial judge in Bell's case merely informed the jury that they must "consider the mitigating circumstances shown by the Defendant, if any, and the aggravating circumstances shown by the State, if any, in arriving at the sentence for the Defendant." Trial Transcript at 719. He added that they could sentence the defendant to death only if "after weighing the mitigating circumstances and the aggravating circumstances, one against the other, that the mitigating circumstances do not outweigh the aggravating circumstances . . . ." Trial

---

**12.** The challenged instructions in *Jordan* were:

The court instructs the Jury that before you may return the death penalty, you must unanimously find in writing that after weighing the mitigating circumstances and the aggravating circumstances one against the other that the mitigating circumstances do not outweigh the aggravating circumstances and that the Defendant should suffer the penalty of death.

. . . . .

The Court instructs the Jury that Proof beyond a reasonable doubt of the statutory elements of the capital offense with which the

accused is charged shall constitute sufficient circumstances to authorize imposition of the penalty of death unless the mitigating circumstances shown by the evidence outweigh [sic] the aggravating circumstances.

. . . . .

The Court instructs the jury that if you believe that mitigating circumstances exists [sic] which outweigh the aggravating circumstances surrounding the crime, then it is your sworn duty to find that the Defendant shall be sentenced to life in prison.
681 F.2d at 1082.

Transcript at 720. The judge offered no definition whatsoever of either aggravating or mitigating circumstances, but left the jurors to decide for themselves the grounds for mercy or retribution. As we stated in *Spivey:* "This is not the clear instruction which guides and focuses the jury's consideration and which we hold the Constitution requires." 661 F.2d at 472.[13]

We note that after Bell presented his appeal, the United States Supreme Court handed down its decision in *Enmund v. Florida,* —— U.S. ——, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). In *Enmund,* the Supreme Court held that under the eighth amendment a death sentence may not be imposed on someone who neither committed the homicide, attempted to commit the homicide, nor participated in the plot to kill the victim. *See also Newlon v. Missouri,* —— U.S. ——, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982) (Brennan & Marshall, JJ., dissenting from denial of certiorari.). Enmund had been sentenced to die for a murder that occurred during the course of a robbery in which he was the getaway car driver. He was not present during the killing, nor was the Court convinced that he had planned to kill anyone.[14]

As in Mississippi, the Florida statute defined any murder committed during the course of a robbery as a capital offense implicating all of the robbers involved. After reviewing the recent trends in the state legislatures and in jury verdicts, the plurality concluded that the death penalty was a disproportionate penalty where the defendant had not actually committed or intended to commit the murder. —— U.S. at ——, 102 S.Ct. at 3378. *Cf. Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). Justice White stressed in his opinion that where a jury is authorized to sentence a defendant to die:

> The focus must be on *his* culpability, not on that of those who committed the rob-

bery and shot the victims, for we insist on "individualized consideration as a constitutional requirement in imposing the death sentence," *Lockett v. Ohio,* 438 U.S. 586, 605 [98 S.Ct. 2954, 2965, 57 L.Ed.2d 973] (1978) (footnote omitted), which means that we must focus on "relevant facets of the character and record of the individual offender." *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976).

—— U.S. ——, 102 S.Ct. at 3377–78 (emphasis in original). He also pointed out that a death penalty imposed on a defendant who has participated solely in the underlying felony serves neither of the two principal social purposes of punishment: deterrence and retribution. *Gregg v. Georgia,* 428 U.S. at 183, 96 S.Ct. at 2929–2930. He explained:

> We are quite unconvinced, however, that the threat that the death penalty will be imposed for murder will measurably deter one who does not kill and has no intention or purpose that life will be taken. . . .
>
> As for retribution as a justification for executing Enmund, we think this very much depends on the degree of Enmund's culpability—what Enmund's intentions, expectations, and actions were. American criminal law has long considered a defendant's intention—and therefore his moral guilt—to be critical to "the degree of [his] criminal culpability," *Mullaney v. Wilbur,* 421 U.S. 684, 698 [95 S.Ct. 1881, 1889, 44 L.Ed.2d 508] (1975), and the Court has found criminal penalties to be unconstitutionally excessive in the absence of intentional wrongdoing.

—— U.S. at ——, 102 S.Ct. at 3377–78. The plurality opinion is in accord with the commentators who have generally criticized the imposition of the death penalty where the felony murder doctrine allows a defend-

---

**13.** Counsel's argument to the jury describing mitigating, or for that matter aggravating circumstances, does not make up for the court's failure to give proper instructions. *Spivey,* 661 F.2d at 472 n. 12.

**14.** The dissent in *Enmund* quarreled with the plurality's review of the evidence. They emphasized that Enmund had planned the robbery. —— U.S. at ——, 102 S.Ct. at 3379 (O'Connor, J., Burger, C.J., Powell and Rehnquist, JJ., dissenting).

ant to be convicted of capital murder solely because he participated in the underlying felony. *See* Comment, "The Constitutionality of Imposing the Death Penalty for Felony Murder," 15 *Hous.L.Rev.* 356 (1978); Comment, "Constitutional Limitations Upon the Use of Statutory Criminal Presumptions and the Felony Murder Rule," 46 *Miss.L.J.* 1021 (1975); Schulhofer, "Harm and Punishment: A Critique of Emphasis on the Results of Conduct in the Criminal Law," 122 *U.Pa.L.Rev.* 1497 (1974); W. LaFave & A. Scott, *Criminal Law* 560 (1972). *See also Model Penal Code,* § 210.2 (Proposed Official Draft, 1962) (recommending elimination of the rule).

As noted earlier in this opinion, there was some evidence produced at trial that Bell did not shoot the victim. Both he and Posey testified that they had pleaded with McFarland to spare the victim's life. It is impossible to tell from the trial record, however, particularly in light of the judge's instructions on capital murder and aiding and abetting, whether the jury convicted Bell because they concluded that he had in fact pulled the trigger or solely because he was involved in the robbery. However, we leave the question of the possible effect of *Enmund* on any death sentence which may hereafter be imposed on Bell to the Mississippi courts.

## VII. DISTRICT COURT PROCEDURE.

█ The defendant has described a number of errors allegedly committed by the district court in this habeas proceeding, none of which affect the outcome of our decision. Bell filed his petition for habeas corpus relief in the District Court for the Northern District of Mississippi, which is the district wherein Bell is presently confined. *See* 28 U.S.C. § 2241(d) (1976). The court, as is its custom, transferred Bell's action to the Southern District of Mississippi, where Bell's trial took place. Contrary to the defendant's assertions, this transfer was not an abuse of discretion under section 2241(d).

In states with more than one federal judicial district, section 2241(d) grants jurisdiction of habeas corpus petitions to the courts of both the district in which the petitioner is incarcerated and the district in which he was convicted. The provision also authorizes transfers from one of the districts with jurisdiction to the other "in the exercise of discretion and in the furtherance of justice." The district court transferred this action on the basis of the magistrate's recommendation which pointed out that the Southern District, where the defendant was convicted, was the more convenient forum because of the accessibility of evidence and that the Northern District had been overburdened with habeas petitions because of the presence there of the state penitentiary. Both of these concerns conform exactly to Congress's intentions in enacting section 2241(d). *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484 (1973). *See also* S.Rep. No. 1502, 89th Cong. 2d Sess. (1966); H.R.Rep. No. 1894, 89th Cong. 2d Sess. (1966), U.S.Code Cong. & Admin. News, p. 2968.

The defendant asserts that he was prejudiced by the transfer, because of the cost to his lawyers of traveling to Biloxi from Jackson and Oxford and the decreased likelihood that character witnesses from Missouri could attend a hearing. As the State points out, however, the defendant could have asked for appointment of counsel under the Criminal Justice Act, 18 U.S.C. § 3006A (1976), as the magistrate's report suggested. He did not request appointment of counsel until a year later, just before the hearing. The argument concerning character witnesses is equally unpersuasive. As noted *infra,* additional character witnesses at the habeas corpus hearing would not have made much difference. Further, St. Louis is far enough away from Greenville that it is unlikely that someone willing to make the trip would be deterred from traveling the additional distance to Biloxi.

█ In support of his ineffective assistance of counsel claim, the petitioner sought to introduce letters from eight persons in St. Louis (where his family lives). The letters stated that the writers, if requested, would have appeared as character witnesses

at the petitioner's trial. The district court refused to admit the letters because they were not properly authenticated. The defendant asked for time to depose the letter-writers and the district court denied the request. Since the introduction of testimony from potential character witnesses was relevant only to the defendant's claim of ineffective assistance during the sentencing proceeding, a claim we need not reach in light of our decision on other grounds that the sentencing proceeding was constitutionally defective, *supra,* we need not review the district court's refusal to grant the defendant an enlargement of time to depose those character witnesses.

 Finally, the defendant claims that the district court erred in denying his request to have his attorneys appointed and remunerated, pursuant to 18 U.S.C. § 3006A(g) (1976) and Rule 8(c) governing proceedings under 28 U.S.C. § 2254 (1976). We have held that the appointment of counsel under Rule 8(c), 28 U.S.C. § 2254 is mandatory if a habeas petitioner qualifies under 18 U.S.C. § 3006A(g). *Lamb v. Estelle,* 667 F.2d 492 (5th Cir.1982); *Wood v. Wainwright,* 597 F.2d 1054 (5th Cir.1979). Since Bell had already been adjudged a pauper, and therefore was qualified under section 3006A(g) for the appointment of counsel, the district court's perfunctory denial of his request for appointment was error. The district court should have appointed Bell's counsel under Rule 8(c) so that they could be remunerated for their representation of the defendant in accordance with section 3006A(g), as indeed was suggested in the magistrate's report as a means of avoiding any possibility of prejudice occasioned by the transfer of the defendant's action from the Northern District of Mississippi to the Southern District.

## VIII. CONCLUSION.

We hold, in agreement with the district court, that

(1) the trial judge's refusal to give a lesser included offense instruction was correct in light of the absence of any evidence to support a conviction on the lesser included offense and acquittal on the greater;

(2) the trial judge's failure to define the elements of armed robbery and kidnapping was harmless error;

(3) the exclusion of four jurors was not a violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), because all four clearly indicated that they could not vote for the death penalty no matter what the law required;

(4) the defendant was not denied effective assistance of counsel during the guilt phase of his trial; and

(5) the defendant made no showing that his accomplice's testimony was obtained through unconstitutional means.

We are unable to find any abuse of discretion in the district court's transfer of the defendant's habeas corpus action from the Northern District of Mississippi to the Southern District. The court should, however, have appointed counsel for the defendant to represent him during the habeas proceedings since he qualified for appointment under 28 U.S.C. § 3006A(g). Accordingly, counsel should be remunerated for their services during these proceedings in accordance with section 3006A(g).

Finally, we must reverse so much of the district court's judgment as held that the state trial court's sentencing instructions were constitutionally adequate. We direct the district court to issue the writ of habeas corpus unless the State of Mississippi decides within a reasonable time to conduct a new sentencing proceeding or to impose a sentence less than death, all to the extent and in the manner provided by state law.

AFFIRMED IN PART, REVERSED IN PART and REMANDED.