## HARRY SMITH *v*. THE STATE.

CRIMINAL LAW. *Practice. Competency of jurors. Conscientious scruples.*

S. was indicted for murder. In impaneling a jury to try his case, the court asked two members of the special *venire* if they had any conscientious scruples against the infliction of capital punishment, and each replied that he "would not like for a man to be hung." The court then declared them incompetent for jurors, and discharged them, although the counsel of the accused requested that they should be further examined touching their conscientious scruples. *Held,* that the action of the court was erroneous.

ERROR to the Circuit Court of Hinds County.

Hon. S. S. CALHOON, Judge.

Harry Smith, the plaintiff in error, was indicted in the Circuit Court of Hinds county, for the murder of Jourdan Cash. His case was called for trial at the August term, 1876. In examining the members of the special *venire* as they were presented, with reference to their qualifications to serve on the jury being impaneled to try the case, the court asked Luke Larry and Henry Lee, respectively, if they had any conscientious scruples in regard to the infliction of capital punishment. Each answered that he " would not like for a man to be hung." The court then declared them to be incompetent. The prisoner's counsel requested the judge to examine Larry and Lee further touching their conscientious scruples against capital punishment, but he refused to do so, and discharged them. To this action of the court the accused excepted.

*Gillespie & North*, for the plaintiff in error.

In answer to the question propounded by the court, Luke Larry and Henry Lee did not reply (nor could such inference be deduced) that they had any conscientious scruples against the infliction of capital punishment. The feeling manifested by their statements that they " would not like for a man to be hung," would not influence their minds, as jurors, in deciding upon the evidence, nor prevent them from concurring in a verdict of guilty, because under our statutes, upon a conviction for murder, the jury have it in their power to declare that the punishment shall be imprisonment for life, instead of death. Laws 1875, p. 79, sec. 2.

The court would not permit any further examination of Larry and Lee after their answers that they " would not like for a man to be hung," and would not make any explanation to them as to conscientious scruples. The accused had a right to these men, either for peremptory challenge, or challenge for cause, or for acceptance. The law requires that a list of the special *venire* shall be furnished, so that he may select his jury, as far as it is practicable for him to do so, by the ex-

ercise of his right of challenge. *Boles* v. *The State*, 13 Smed. & M. 398.

A large class of the community doubt the expediency of capital punishment, others have a strong repugnance to it, while some individuals sincerely entertain conscientious scruples against it. It is this latter class that have been held as disqualified to serve as jurors when, upon conviction, the penalty will be death, provided that their scruples are such as would prevent their finding a true verdict according to the evidence. *Williams* v. *The State*, 32 Miss. 389.

But in all the decisions of this court, where a man has been declared incompetent for a juror on the ground of conscientious scruples, he has expressed himself as having such scruples.

*G. E. Harris*, Attorney-General, for the State, filed a written brief and argument, and, among other things, insisted that the jurors Larry and Lee were incompetent, and that they were properly set aside by the court. Citing *Lewis' Case*, 9 Smed. & M. 118, 119; *Williams' Case*, 32 Miss. 397, 398.

A juror who has conscientious scruples against the infliction of capital punishment is incompetent as a juror in a capital case. *Stalls* v. *The State*, 28 Ala. 25; *Martin* v. *The State*, 16 Ohio, 364; *Howard's Case*, 17 N. H. 171; *Pierce's Case*, 13 N. H. 556; *O'Brien's Case*, 48 Barb. 478; *Wallon's Case*, 40 Ala. 325; *Stewart's Case*, 7 Cal. 140; *Wilson's Case*, 1 Baldw. 78; *Atkin's Case*, 16 Ark. 568; *Gross' Case*, 2 Carter, 329; *Lesher's Case*, 17 Serg. & R. 155; *Williams' Case*, 3 Kelly, 453; *Mathew's Case*, 4 Wend. 229; *Damon's Case*, 13 Wend. 351; *Willis' Case*, 12 Ga. 444; *Wade's Case*, 12 Ga. 25; *Payrie's Case*, 3 Humph. 375; *Neely's Case*, 13 Ill. 687; *Jewell's Case*, 33 Me. 583; *Walter's Case*, 32 N. Y. 147.

It is the duty of the court to see that an impartial jury is impaneled, and that it is composed of men above all exception. *Lewis' Case*, 9 Smed. & M. 118, 119.

The question is considered as entirely settled that a juror is incompetent unless he be above all exception. *Williams'*.

*Case*, 32 Miss. 398; Const. Miss., art. 1, sec. 7; *Ogle's Case*, 33 Miss. 383; *Nelm's Case*, 13 Smed. & M. 500; *Cotton's Case*, 31 Miss. 504.

The court should set aside a juror without challenge, if there is reason to suspect that he will act under some undue influence or prejudice. Whart. Cr. Law. 858; *McGuire's Case*, 37 Miss. 576, 577.

CHALMERS, J., delivered the opinion of the court.

Two members of the special *venire*, being asked by the court whether they had conscientious scruples against the infliction of capital punishment, replied, each in the same language, " I would not like for a man to be hung." Thereupon the court declared them incompetent as jurors, and ordered them to stand aside. Counsel for the accused requested that the men might be questioned further touching their conscientious scruples, but this was denied.

This action of the court was erroneous. We held in *Russell's Case*, 53 Miss., that the court might upon its own motion set aside as incompetent a party called as a juror, who declared that he had conscientious scruples against capital punishment, without further inquiry.

This was carrying the doctrine further than it is frequently announced, it being sometimes said that the scruples will not disqualify unless the party declares that they will prevent him from doing justice, or that they will give his mind a bias.

We are not disposed to carry the doctrine further. The declaration of the rejected jurors, in this case, amounted only to a statement that they would not like for a man to be hung. Few men would. Every right-thinking man would regard it as a painful duty to pronounce a verdict of death upon his fellow-man. But this is far short of that deep conviction that God has not given to man the right, under any circumstances, to take the life of his fellow-man, which is entertained by a few persons in every community, and which the law styles conscientious scruples against the infliction of capital punishment.

We see no error in the exclusion of testimony, under the circumstances of the case. For the error in improperly rejecting the two members of the special *venire* the case must be reversed. *Boles* v. *The State*, 13 Smed. & M. 398 ; *Williams* v. *The State*, 32 Miss. 390.

Judgment reversed and *venire de novo* awarded.