Leo E. EDWARDS, Jr., Plaintiff,

v.

Morris THIGPEN, Commissioner, Mississippi Department of Corrections, Eddie Lucas, Warden, Mississippi State Penitentiary; T.B. Bruce, State Executioner; and the State of Mississippi, Defendants.

Civ. A. No. J83–0566(B).

United States District Court, S.D. Mississippi, S.D.

Sept. 14, 1984.

1274

David W. Clark, George Q. Evans, Wise, Carter, Child & Caraway, Jackson, Miss., Samuel W. Murphy, Jr., Cameron L. Cowan, Donavon, Leisure, Newton & Irvine, New York City, for plaintiff.

William S. Boyd, III, Sp. Asst. Atty. Gen., Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

Leo Edwards was convicted of the capital murder of Lindsey Don Dixon which was committed during the robbery of the convenience store at which Dixon was working at the time. Edwards was indicted along with Mikel Leroy White. White pled guilty to the lesser offense of murder and was sentenced to life imprisonment. This habe-

as corpus petition of Leo Edwards attacks the constitutionality of his conviction and the imposition of the death penalty.

This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1331, 2241–2254. The Petitioner Edwards is in the custody of the Mississippi Department of Corrections pursuant to a judgment of the Circuit Court of the First Judicial District of Hinds County, Mississippi. This conviction was affirmed by the Mississippi Supreme Court. *Edwards v. State*, 413 So.2d 1007 (Miss.), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982). Thereafter, the Petitioner filed an Application for Leave to File a Petition for Writ of Error Corum Nobis with the Mississippi Supreme Court. That Petition was denied. *Edwards v. Thigpen*, 433 So.2d 906 (Miss.1983). On direct appeal Leo Edwards presented the Supreme Court with the following array of errors which he alleged the trial court committed in that it:

(1) excused a juror for conscientious scruples against the death penalty, (2) failed to instruct the jury on circumstantial evidence, (3) allowed the state to show a "separate and distinct crime," (4) refused to reduce the "charge to murder," (5) admitted into evidence a "photograph of deceased," (6) held the evidence was sufficient, (7) allowed Defendant's co-indictee to receive a life sentence, and (8) denied Defendant "effective assistance of counsel."

*Edwards*, 413 So.2d at 1008. The Mississippi Supreme Court addressed all of the assignments of error, rejected each of them, and affirmed the conviction.

In his petition for post conviction relief by way of error coram nobis Edwards raised issues which had been raised on direct appeal as well as the following points which had not been raised on direct appeal:

1) Edwards urged the court to grant him relief because of the exclusion for cause of jurors with scruples against the death penalty. The exclusion of one of the jurors (Hibler) has been argued on direct appeal and the Mississippi Su-

preme Court refused to review their original adjudication; however, the court held that as to the exclusion of the other juror (Hopkins), that Edwards had not assigned that on direct appeal and accordingly had accepted the trial court's determination and was barred from seeking relief on that basis in his error coram nobis petition.

2) Edwards asserted that there had been a systematic exclusion of Blacks and those with scruples against the death penalty. This has become known as the "conviction prone" jury issue. This issue was raised at trial; however, it was not assigned as an error on direct appeal. The court held that he was barred from raising that issue on coram nobis.

3) The third ground which Edwards assigned complained of the introduction by the prosecutor of evidence of a separate and distinct crime. This was raised at trial and on direct appeal and the court held that it was barred as a previously litigated matter.

4) The fourth assignment claimed that the prosecutor made inflammatory and prejudicial remarks during closing argument. The court held that regardless of whether this ground was urged on direct appeal under the rubric of effective assistance of counsel or whether the petitioner failed to so argue it, it would be barred because if not raised it would have been waived, the petitioner having accepted the trial court's determination, and, if raised, it was a previously litigated issue and inappropriate for consideration on that ground.

5) The fifth assignment made was with regard to the disproportionate and arbitrary imposition of the death penalty. While this was raised at trial and on direct appeal, the Petitioner urged the court to reconsider in light of *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). The court did reach this limited point holding that *Enmund* was not applicable.

6) The sixth ground assigned was the state's interjection during the penalty phase of the trial of non-statutory aggra-vating circumstances. The Petitioner argued that his objection to convictions which were introduced into evidence was sufficient to preserve this error. The Mississippi Supreme Court held that it was not and in any case it had not been raised on direct appeal and was therefore barred from consideration.

7) The seventh ground for relief which was urged was the trial court's instruction on the "pecuniary gain" and "in the commission of robbery" aggravating circumstances and the shifting of the burden of proof. The Supreme Court held that if this issue was raised at trial it was done so by broad based objections and that it was not preserved and was barred.

Thus, in this case the Mississippi Supreme Court changed its policy of allowing points not previously presented on direct appeal to be raised for the first time on petition for writ of error coram nobis and announced and applied its new rule of enforcing a strict procedural bar against presenting errors not previously raised both at the trial level and then on direct appeal.

## THE TRIAL

Leo Edwards was a resident of New Orleans who had escaped from prison. He had a series of convictions for robbery in New Orleans. He also was convicted of the murder of one Lee Artis Newsome prior to the conviction in the instant case and had been sentenced to life imprisonment.

On the night of the murder of Lindsey Don Dixon, the convenience store operator, Edwards and Mikel White were in White's girlfriend's car. At this point the stories of Edwards and White diverge. Both White and Edwards point to the other as the person who went into the convenience store and actually pulled the trigger, firing the gun which killed Dixon.

According to White's testimony upon which Edwards was convicted, he drove Edwards to the convenience store under the pretense of Edwards' obtaining some

money from a girlfriend. Edwards got out of the car and White was told to wait in the car around the block. During the intervening minutes White fell asleep and was awakened by Edwards banging on the window to let him in, White having locked the doors. White testified that Edwards gave him some money and told him that he had shot someone. The next evening Officer David Williams with the Jackson Police Department, who was off duty at the time, during the investigation of an unrelated disturbance, stopped Edwards after receiving a tip from a by-stander that Edwards was going to kill someone over some money. After stopping Edwards he took the pistol which was in Edwards possession but a crowd gathered and Edwards slipped away from Williams. Williams failed to turn in the pistol promptly to the Department, and the circumstances of Williams' presence with his partner during the early morning hours while off duty were not entirely clear. Williams was later prosecuted and dismissed from the police department for misconduct. However, this pistol which Williams testified he took from Edwards after identifying him in the courtroom, provided the connection between Edwards and the slaying of the convenience store employee, Lindsey Don Dixon. The bullet which killed Dixon was compared to a bullet fired from the gun taken from Edwards and an expert testified that Edwards' gun was the one which fired the fatal shot.

Edwards and White were arrested in Senatobia, Mississippi a few days later when detained on a traffic violation and a routine check revealed that they were wanted for armed robbery and murder. Both signed conflicting confessions at that point.

## GROUNDS ASSERTED AS BASIS FOR PETITION FOR HABEAS CORPUS

Edwards, in his petition requesting this Court to grant a writ of habeas corpus asserts the following grounds in support of his contention that his trial, conviction and sentence of death was in violation of his rights: (1) there was an improper exclusion of two otherwise qualified jurors because of personal reservations expressed with regard to capital punishment, a violation of *Withespoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); (2) the process of "death-qualifying" the individuals in the presence of the entire venire effected a guilt or conviction-prone jury which is unconstitutional; (3) the systematic exclusion of Blacks from this jury resulted in an unrepresentative and conviction-prone jury and followed a regular and systematic prosecution policy; (4) the introduction of hearsay testimony during the guilt phase of the trial of the separate act of violence allegedly committed by Edwards which occurred prior to the seizure of the gun and the Mississippi Supreme Court's affirmance of the conviction in spite of this because of its determination that no mistrial was requested was erroneous; (5) the trial court improperly refused to instruct the jury that a life sentence could be imposed even if the aggravating circumstances outweighed the mitigating circumstances; (6) the Mississippi capital punishment statute allows the jury to find two separate aggravating circumstances based on a single set of facts proven in the guilt phase, namely, that the jury in this case found that the murder of the convenience store clerk in the course of a robbery was both "for pecuniary gain" and was "committed while the defendant was engaged in the commission of a robbery"; (7) the introduction during the sentencing phase of the trial of prior misdemeanor and non-violent felony convictions as aggravating circumstances was not within the statutory requirement of "another capital offense or a felony involving the use or threat of violence ....."; (8) there were inflammatory statements during closing arguments of the sentencing phase; (9) there was exclusion on hearsay grounds of testimony from two defense witnesses relevant to the issue of mitigation; (10) the Mississippi statute permits imposition of the death penalty in a disproportionate and arbitrary fashion in that it allows the penalty without the finding of intent to kill; (11) the Mississippi Supreme Court's proportionality review is inconsistent and not meaningful; (12) the

Defendant was deprived of due process by the Mississippi Supreme Court's adoption in this case of new procedural restrictions on collateral review and its retroactive application of them so as to preclude review of substantial constitutional issues in post-conviction proceedings; (13) Edwards had ineffective assistance of counsel in that if judged by the standards announced in this case on Edwards request for post-conviction relief counsel failed to raise many meritorious constitutional issues on direct appeal, and he failed to investigate the one plausible line of defense and prevented Edwards from testifying in his own behalf, in fact, putting on no proof whatsoever in Edwards' defense.

Edwards requests an evidentiary hearing with respect to the "death qualification" of the jury, the prosecution's systematic exclusion of Blacks which resulted in the all-white jury which convicted and sentenced him to death, the Supreme Court's inconsistent and arbitrary proportionality review and the claim that petitioner's counsel was ineffective at trial and on direct appeal.

## HABEAS REVIEW.

■■■ In recent years the law which applies to petitions for writs of habeas corpus has been substantially changed. Much of the change which has occurred has been directed toward the fundamental proposition that the state courts should be accorded an opportunity to rule on a question arising under the constitution or federal law prior its being addressed by the federal courts on habeas review. Not only must the petitioner present the question to the state courts but he must also exhaust all available remedies to procure a correction of the error from the state courts. 28 U.S.C. § 2254(b). A petition which contains both exhausted and non-exhausted claims must be dismissed or the petitioner must waive or forfeit the unexhausted claims. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The failure of a petitioner to exhaust may be excused where to do so would be an act of futility. *Galtieri v. Wainwright,* 582 F.2d 348, 354 (5th Cir.1978) (in banc); *See also*

*Rowell v. Oesterle,* 626 F.2d 437, 438 n. 1 (5th Cir.1980). Where a claim was presented to the state courts but the courts invoked an independent and adequate state ground for not reviewing that claim, then the federal courts will respect that bar and refuse to reach the merits of the claim absent a showing of cause and actual prejudice. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

The object of the above stated rules is to focus the defendant's attention on the trial court wherein any and all errors which affect the legality of a conviction should be pointed out to the court and a record developed. On direct appeal the state should be given the opportunity to correct the errors of its own courts before these are presented to the federal courts in a habeas proceeding. Ideally, every claim which is based on a perceived error of constitutional dimension should be raised and presented to the judge presiding at a trial as well as argued on appeal. This would allow the state courts the full opportunity to develop a factual record as far as the claimed error is concerned and to correct the error if it is appropriate.

At the trial of Edwards his attorney made timely objections to almost every conceivable error. Indeed, this was the portentous event where a man was on trial for his life. Edwards trial attorney was obviously sensitive to the fact that he must preserve any and all errors by voicing an objection and couching it as much as possible in terms of constitutional rights.

On direct appeal Edwards' trial attorney made a tactical decision which was warranted under existing law. He addressed only those points on appeal which he felt would attract the attention of the justices on the Mississippi Supreme Court. *See Jones v. Barnes,* 463 U.S. 745, ___, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987, 994 (1983). This decision on the part of Edwards' attorney was obviously based on the practice of the Mississippi Supreme Court to undertake a plenary review of the record in all

**1278**

death penalty cases. *See Edwards v. Thigpen,* 433 So.2d 906, 909–10 (Miss.1983) (Robertson, J. concurring) (tradition of heightened inquiry regardless of procedural default).

■ The well-established law in Mississippi has been that appellate review of death penalty cases will be conducted painstakingly and in spite of procedural niceties, and not as an act of judicial grace. *Fisher v. State,* 145 Miss. 116, 110 So. 361 (1926); *Carter v. State,* 198 Miss. 523, 528, 21 So.2d 404 (1945); *Gipson v. State,* 203 Miss. 434, 437, 35 So.2d 327, 328 (1948); *Musselwhite v. State,* 212 Miss. 526, 54 So.2d 911, 914–15 (1951); *Culberson v. State,* 379 So.2d 499, 506 (Miss.1980); *Smith v. State,* 419 So.2d 563, 568 (Miss. 1982); *Wheat v. State,* 420 So.2d 229, 239 (Miss.1982).

While Mississippi's rule requiring a heightened review of death penalty cases is admirable, it is certainly not constitutionally required. There is nothing impermissible about the Mississippi Supreme Court's utilization of the procedural bar to deny review either on direct appeal or on a post-conviction application. The fact that they have determined to utilize the procedural bar in order to avert habeas review by the federal courts of claims does not make their utilization of the procedural bar impermissible. As long as the Supreme Court consistently applies the procedural bar in every instance where it is applicable the federal courts should and must respect the independent and adequate state grounds for procedurally barring review of a claim.

■ The question before this Court is whether or not the retroactive application of the strict invocation of procedural default on coram nobis review will serve to procedurally bar federal habeas review of errors asserted by the petitioner. In this case the petitioner had every reason to expect that the Mississippi Supreme Court would address the merits of his petition for a writ of error coram nobis and should not be unjustly penalized for the Mississippi Supreme Court's announcement of a change in its procedural policy with regard

to death penalty cases. The applying of a procedural rule on coram nobis which did not exist at the time of the direct appeal places the petitioner in an untenable position of forfeiting possible assignments of error because of his reliance on the coram nobis proceeding to allow exhaustion. Under the procedural rules as they existed when Edwards' attorney made the direct appeal, Edwards could be assured that his other points would be preserved by a decision on the merits of Edwards coram nobis petition. When the petition was denied on procedural grounds with regard to many of his assignments of error on coram nobis, Edwards' claims were insulated from federal review without any warning that his omission of such assignments of error on direct appeal would have the effect of precluding federal review of those claims which were not so argued. Accordingly, by abandoning its prior rule and applying the procedural default canons retroactively to cases that had been decided on direct appeal while the former rule was in effect, the Mississippi Supreme Court created:

> a situation where a state court has followed a regular past practice of entertaining claims in a given procedural mode, and without notice has abandoned that practice to the detriment of a litigant who finds his claim foreclosed by a novel procedural bar .... [A] procedural requirement has been sprung upon an unwary litigant when prior practice did not give him fair notice of its existence.

*Walker v. City of Birmingham,* 388 U.S. 307, 319, 87 S.Ct. 1824, 1831, 18 L.Ed.2d 1210 (1967) (citing *Barr v. City of Columbia,* 378 U.S. 146, 84 S.Ct. 1734, 12 L.Ed.2d 766 (1964), and *Wright v. Georgia,* 373 U.S. 284, 291, 83 S.Ct. 1240, 1245, 10 L.Ed.2d 349 (1963)). *See also Granviel v. Estelle,* 655 F.2d 673, 679 (5th Cir.1981), *cert. denied,* 455 U.S. 1003, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982) ("We cannot enforce against Granviel a contemporaneous rule that did not even exist at the time of his trial"). It was reasonable for Edwards' attorney to rely upon the Mississippi Supreme Court's practice of reviewing direct appeals in death penalty cases without re-

gard to procedural niceties and reaching the merits on coram nobis petitions in death penalty cases.

Accordingly, this Court holds that the procedural bar invoked by the Mississippi Supreme Court on Edwards' petition for a writ of error coram nobis did not constitute an independent and adequate state ground such as to bar review of those claims by the federal court on habeas corpus. The claims which Edwards raised both on direct appeal and on his petition for writ of error coram nobis have accordingly been exhausted as required by the statutes and decisions relating to habeas corpus and may be considered by this Court.

## MERITS OF GROUNDS FOR GRANTING HABEAS CORPUS

### I.

The first point raised and argued is a violation of the doctrines set forth in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), in the exclusion of two jurors. Petitioner asserts that even though the two jurors were subject to challenge for cause under *Witherspoon* because of their unequivocal responses to the inquiry of the trial judge relative to the guilt phase, they were rehabilitated by the later questions of defense counsel and their answers thereto relative to the penalty phase. A complete review of the voir dire of each of these jurors is necessary to determine whether there was a violation.

The first mention of the death penalty during voir dire was by the Court in the way of a general question to the jurors stated as follows: "Do any of you have any conscientious scruples against the infliction of the death penalty when the law authorizes it and in proper cases and where the testimony warrants it?" *Trial Transcript* at 46. Several jurors raised their hands in response to this question. The Court questioned them individually. Both juror Hopkins and juror Hibler were questioned by the Court at this point. These are the two jurors who were successfully challenged for cause by the prosecution and with reference to whom the *Witherspoon* violation is alleged. The Court first questioned Ms. Hopkins as follows:

BY MS. HOPKINS: I have conscientious scruples about determining the death penalty in cases.

BY THE COURT: Well, I am not sure that I understand your answer. You have conscientious scruples about you making the decision, Mrs. Hopkins?

BY MS. HOPKINS: Are you saying that the jury would make the decision as to whether the individual receives the death penalty?

BY THE COURT: Yes Ma'am.

BY MS. HOPKINS: I am saying that I don't believe I am capable of deciding a death penalty for another individual.

BY THE COURT: Because of your religion? I didn't catch that last part.

BY MS. HOPKINS: Because of my personal belief as an individual.

BY THE COURT: Thank you. And the next one is Pamela Hibler. Is that right?

BY MS. HIBLER: Yes sir.

BY THE COURT: Okay.

BY MS. HIBLER: I just don't think I could be a juror to decide on a person.

BY THE COURT: That's what I was afraid of. I was afraid that you and Ms. Hopkins both might be misunderstanding my question. It's not a question of whether you could make the decision. It's a question of whether you have conscientious scruples about—

BY MS. HIBLER: I have conscientious scruples and religious belief also.

BY THE COURT: Thank you.

*Trial Transcript* at 48–49. After questioning other jurors the Court addressed those who had indicated that they had conscientious scruples against the death penalty as follows:

BY THE COURT: Now, to each of you who raised your hand, I want you to listen to the next question. Even though you may have conscientious scruples about the infliction of the death penalty, I ask you whether or not you could follow the testimony and

the instructions of the Court and return a verdict of guilty although that verdict could result in the death penalty if you, being the judges of the weight and worth of the evidence, were convinced of the guilt of the defendant and the circumstances warranted such a verdict? Now do you understand the question? (no response)

BY THE COURT: It's a rather detailed question and I want to make sure that each one of you understands the question. I think I will repeat it to make sure that each one of you understands it. This is directed just to those that said they had conscientious scruples against the infliction of the death penalty. Could you follow the testimony and the instructions of the Court and return a verdict of guilty although that verdict could result in the death penalty if you, being the judges of the weight and worth of the evidence, were convinced of the guilt of the defendant and the circumstances warranted such a verdict? Now, I'll take each one of you individually ...

The Court addressed the individuals:

BY THE COURT: Thank you. Ms. Hopkins, did you understand the question?

BY MS. HOPKINS: I think I understood the question.

BY THE COURT: Well, do I need to repeat it again for you?

BY MS. HOPKINS: No, I don't think so. I think I would feel the same way.

BY THE COURT: Are you telling me that you could not vote guilty? Is that what you were saying?

BY MS. HOPKINS: Yes, that's what I am saying.

The Court continued questioning the jury:

BY THE COURT: Ms. Hibler?

BY MS. HIBLER: I couldn't.

With this, the Court concluded its general voir dire of the jury. Mr. Peters, representing the State, began his voir dire and addressed the jurors who had expressed reservations about the imposition of the death penalty. *Trial Transcript* at 59–70. During this questioning the prosecutor did not ask any questions relative to *Witherspoon* of jurors Hopkins and Hibler. The next questions addressed to jurors Hopkins and Hibler were by the Defense counsel, Mr. Stanfield. This sequence of questioning occurred as follows:

BY MR. STANFIELD: Ms. Hopkins—I am calling your name correctly:

BY MS. HOPKINS: Yes.

BY MR. STANFIELD: Mr. Peters butchered it this morning, didn't he? You stated this morning that you had conscientious scruples pertaining to the death penalty and did you state that it was on religious grounds?

BY MS. HOPKINS: I did not base it on religious convictions. I said it was an individual principle that I had.

BY MR. STANFIELD: Ms. Hopkins, do you realize that jury duty is a civic obligation? Do you not?

BY MS. HOPKINS: Yes.

BY MR. STANFIELD: And it's your duty to serve on the jury if you can do so without violence to your own conscience. You realize that, do you not?

BY MS. HOPKINS: Yes.

BY MR. STANFIELD: And that you, as a good citizen, should accept the law as His Honor gives it to you regardless of whether we might agree with it or not. Is that not correct?

BY MS. HOPKINS: Yes.

BY MR. STANFIELD: That we should follow the law whether we agree with it or not, should we not?

BY MS. HOPKINS: Yes.

BY MR. STANFIELD: You realize, too, Ms. Hopkins, that you not, that, if Leo Edwards is found guilty of capital murder, that the jury must decide what sentence is to be imposed in the second phase of the trial? You realize that, do you not?

BY MS. HOPKINS: Yes.

BY MR. STANFIELD: The first phase being that you must find innocence or guilt and that's the only question and then, in the second phase, that you find whether—if you get that far—if you find him guilty of murder or man-

slaughter, you don't go into the second phase. It's only if you find him guilty of capital murder and that's the purpose for me asking you this question is in the event that it does go that far but, in the second phase, in the sentencing phase, if he is found guilty in the first sentencing phase or the first phase of guilt or innocence, that you, if you are sitting on the jury, must decide what sentence shall be imposed. You realize that, do you not?

BY MS. HOPKINS: Yes.

BY MR. STANFIELD: And you understand that under the law as His Honor read it to you this morning that the jury, that you as a member of the jury should consider whether a penalty of death should be imposed. Do you remember the Judge reading if you could fairly consider the question of death in the event that it arose. Right?

BY MS. HOPKINS: Yes.

BY MR. STANFIELD: All right. Would you not try your very best to uphold the law as a juror and as a citizen if you were called upon to do so?

BY MS. HOPKINS: I would try my very best but I would have to be fair.

BY MR. STANFIELD: All right. But what I am talking about is to just do your very best—would you honestly and fairly consider whether a penalty of death should be imposed in order to be a law-abiding citizen and if the Court calls upon you to do so?

BY MS. HOPKINS: Yes.

BY MR. STANFIELD: You could do that?

BY MS. HOPKINS: Yes.

BY MR. STANFIELD: Thank you.

*Trial Transcript* at 218–21.

Defense counsel then proceeded to question other jurors and came to Ms. Hibler at which point the following questions were asked and answers elicited:

BY MR. STANFIELD: Now, where is— is it Mr. Hibler or Ms. Hibler?

BY MS. HIBLER: Mrs.

BY MR. STANFIELD: I am sorry. I had it out of order. Its Mrs. Pamela Hibler, is it not?

BY MS. HIBLER: Yes.

BY MR. STANFIELD: Now, I believe you stated that you had religious beliefs, didn't you?

BY MS. HIBLER: Yes, sir.

BY MR. STANFIELD: And I believe you stated this morning, you said: "I don't think I could be a juror". Is that what I understood you to say?

BY MS. HIBLER: I didn't understand you.

BY MR. STANFIELD: Did you say this morning to Mr. Peters: "I don't think I could be a juror."?

BY MS. HIBLER: Yes.

BY MR. STANFIELD: Could you, Mrs. Hibler, if you were seated as a juror in this case, would you do your best to set aside your personal feelings and, after hearing all of the evidence, that is, the sworn evidence that comes from the witness stand, and the instructions of law which His Honor will give you at the conclusion of the case and on that, in an effort to follow your duty as a juror, would you fairly consider all of the penalties which the law has provided?

BY MS. HIBLER: Yes.

BY MR. STANFIELD: And you say yes?

BY MS. HIBLER: Yes.

BY MR. STANFIELD: All right. Thank you, Mrs. Hibler.

*Trial Transcript* at 224–26.

Shortly after this questioning the voir dire ended and the Court sustained prosecution's challenges of jurors Hopkins and Hibler.

The Supreme Court first addressed the exclusion of jurors on the basis of their beliefs with respect to capital punishment in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The State of Illinois had passed a statute which provided that a juror in a trial for murder could be challenged because he had "conscientious scruples against capital punishment, or that he [was] opposed to the same." *Witherspoon,* 391 U.S. at 512, 88 S.Ct. at 1772. The Court held that a de-

fendant sentenced to death by a jury selected in such a fashion had been deprived of life without due process of law. *Witherspoon*, 391 U.S. at 523, 88 S.Ct. at 1778. The holding of the Court was expressed as follows: "We hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." *Witherspoon*, 391 U.S. at 522, 88 S.Ct. at 1777. In the margin of this opinion the Court explained its holding in what has become the most frequently used statement of the rule.

> Just as veniremen cannot be excluded for cause on the ground that they hold such views, so too they cannot be excluded for cause simply because they indicate that there are some kinds of cases in which they would refuse to recommend capital punishment. And a prospective juror cannot be expected to say in advance of trial whether he would in fact vote for the extreme penalty in the case before him. The most that can be demanded of a venireman in this regard is that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. If the voir dire testimony in a given case indicates that veniremen were excluded on any broader basis than this, the death sentence cannot be carried out even if applicable statutory or case law in the relevant jurisdiction would appear to support only a narrower ground of exclusion. (reference omitted)

> We repeat, however, that nothing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that

might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt*. Nor does the decision in this case affect the validity of any sentence *other* than one of death. Nor, finally, does today's holding render invalid the *conviction,* as opposed to the, *sentence* in this or any other case. (emphasis in the original).

*Witherspoon,* 391 U.S. at 522 n. 21, 88 S.Ct. at 1777 n. 21.

 The Supreme Court recently reaffirmed its holding in *Witherspoon* in *Adams v. Texas,* 448 U.S. 38, 48, 100 S.Ct. 2521, 2528, 65 L.Ed.2d 581 (1980) stating that "if prospective jurors are barred from jury service because of their views about capital punishment on 'any broader basis' than inability to follow the law or abide by their oaths, the death sentence cannot be carried out." *Id.* There are two prongs to the *Witherspoon* inquiry. One concerns the imposition of the death penalty to which the juror must testify that they would automatically vote against it, regardless of what the evidence might show. As to the second prong, the determination of guilt or innocence, the juror must "make unmistakably clear" that their attitude toward the death penalty would prevent them from making an impartial decision as to guilt. *Burns v. Estelle,* 626 F.2d 396 (5th Cir.1980) (en banc). In *Burns* the Fifth Circuit found a *Witherspoon* violation despite the fact that the juror had stated that she did not believe in the death penalty and that it would affect her deliberation on any issue of fact in the case. "These are strong expressions indeed, but they fall short of unequivocal avowals disqualifying her under either aspect of *Witherspoon's* two-prong test, ...." *Burns* 626 F.2d at 397–98. Expressions of jurors indicating their realization of the gravity of the death penalty and their hesitation to impose it do not rise to the level that will permit their disqualification for cause. As the Mississippi Supreme Court stated in a case which the United States Supreme Court cited, apparently with approval, in *Witherspoon,*

The declaration of the rejected jurors in this case, amounted only to a statement that they would not like . . . a man to be hung. Few men would. Every right thinking man would regard it as a painful duty to pronounce a verdict of death upon his fellow-man.

*Smith v. State*, 55 Miss. 410, 413–14 (1887). Neither deep reluctance to pronounce the death penalty short of absolute refusal to do so, nor the reservation of the death penalty for only an extreme set of circumstances is an appropriate ground for exclusion under *Witherspoon*. *O'Bryan v. Estelle*, 714 F.2d 365, 380 (5th Cir.1983). (The exclusion of a juror is appropriate where they have unequivocally stated their inability to vote for the death sentence without regard to the evidence adduced.) E.g., *Bell v. Watkins*, 692 F.2d 999, 1006 (5th Cir. 1982) *cert. denied*, —— U.S. ——, 104 S.Ct. 142, 78 L.Ed.2d 134 (1983); *Williams v. Maggio*, 679 F.2d 381, 384 (5th Cir.1982) (en banc), *cert. denied*, —— U.S. ——, 103 S.Ct. 3553, 77 L.Ed.2d 1399 (1983). In *Williams v. Maggio*, juror Brou initially answered the prosecutor's question regarding her ability to impose the death penalty by an equivocation. She then answered the prosecutor that she could not return the death penalty, but then returned to her hesitation. The Fifth Circuit held that this direct response viewed in conjunction with her previous and subsequent equivocations was sufficient to satisfy *Witherspoon* with respect to her exclusion for cause. *Williams v. Maggio*, 679 F.2d at 386. In *Burns v. Estelle*, 626 F.2d 396 (5th Cir.1980) (en banc) the court reversed a death sentence imposed where a juror was excused for cause after stating that she did not believe in the death penalty and that the mandatory death penalty or life sentence would affect her deliberation on issues of fact. The juror did not "make unmistakably clear" that her opinion about the death penalty would prevent her from making an impartial decision as to guilt. Nor did she testify that she would automatically vote against the imposition of the death penalty.

▇▇▇ What is important for this Court to consider is the jurors' ultimate conclusions about whether their attitude toward the death penalty would prevent them from making an impartial decision with reference to guilt or innocence. *O'Bryan v. Estelle*, 714 F.2d 365, 381 (5th Cir.1983); *Sonnier v. Maggio*, 720 F.2d 401, 405 (5th Cir.1983). It is clear that although at one time during voir dire a juror makes an unequivocal statement which would disqualify him, that he may be rehabilitated as a qualified juror by subsequent questioning by defense counsel under which the juror expresses affirmatively the ability to fairly consider the question of guilt or innocence. *See Moore v. Maggio*, 740 F.2d 308 (5th Cir.1984); *O'Bryan v. Estelle*, 714 F.2d at 377. Both Hopkins and Hibler expressed conscientious scruples about the imposition of the death penalty. This is no basis for a challenge for cause. The second question was also asked by the Court: "Could you follow the testimony and the instructions of the Court and return a verdict of guilty although that verdict could result in the death penalty if you, being the judges of the weigh and worth of the evidence, were convinced of the guilt of the defendant and the circumstances warranted such a verdict." Juror Hopkins affirmed that she could not vote guilty. Juror Hibler responded that she "couldn't." Thus, both of the jurors were clearly disqualified under the second prong of the *Witherspoon* test.

▇▇▇ The attorney for the Defendant directed a series of questions touching on the first prong of the *Witherspoon* test but in none of those questions did he ever ask directly whether either of the jurors could consider voting to impose the death penalty in spite of their conscientious objections. He asked indirect questions the thrust of which were whether the jurors could follow the law. Even if the jurors after his questioning became qualified under the first prong of the *Witherspoon* test, he did not thereby rehabilitate either of them as to the second prong. Under *Witherspoon* jurors may not be excluded unless they fail one of the prongs; they need not fail both. The conclusion remains that these jurors would have voted not guilty. Accordingly, there was no error in allowing the challenges to them.

## II.

■ The Petitioner asserts as the second ground for granting writ of habeas corpus that the trial court, by allowing the "death qualification" of the jury, violated his right to a fair trial and instead imposed on him a "conviction prone" jury. This argument fails as it has been foreclosed by decisions holding that a jury from which opponents of the death penalty have been excluded in a way which is permissible under *Witherspoon* does not deny a defendant a fair and impartial jury even if such a "death qualified" jury is more likely to favor the prosecution. *Sonnier v. Maggio*, 720 F.2d 401, 407 (5th Cir.1983).

## III.

■ The Defendant urges as his third ground that the prosecution systematically excludes blacks from petit juries. Even a showing that systematic exercise of peremptory challenges on racial grounds in a series of cases does not necessarily require the prosecution to justify its reason for exercising such. *Swain v. Alabama*, 380 U.S. 202, 220, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965); *Sonnier v. Maggio*, 720 F.2d 401, 407 (5th Cir.1983).

## IV.

■ The allowing of hearsay testimony as to a separate and distinct violent crime during the trial of this Defendant was recognized as a mistake both by the trial court judge and the Mississippi Supreme Court on review. The determination that the defense counsel did not request a new trial is a reasonable one in light of the record. This Court cannot say that an error of constitutional dimension was committed by the failure of the trial judge to declare a mistrial or to do more than he did by instructing the jury to disregard such testimony. This breach of evidentiary law did not deprive the petitioner of a fundamentally fair trial.

## V.

The fifth ground which the Petitioner asserts in support of his Petition for Writ of Habeas corpus is the trial court's failure to instruct the jury that it could impose a life sentence even though the aggravating circumstances outweighed the mitigating circumstances. Of course, this is in the nature of an instruction to the jury that they may recommend mercy by giving the sentence of life instead of recommending the death penalty.

■ At the outset it should be noted that the attorney for the Petitioner objected to the trial court's refusal of his instruction which stated that "even if you do not find any of these mitigating circumstances, you may still recommend mercy." (Instruction D–4, Record of Proceedings at 828). This point was not raised on direct appeal nor was it raised in the coram nobis proceedings.

Ordinarily this Court would have to dismiss this Petition as a "mixed petition" under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). In this instance, a dismissal of this Petition would serve no purpose in the furtherance of comity and federalism, *see McGee v. Estelle*, 722 F.2d 1206, 1210–12 (5th Cir.1984) ("Respect [for the states] should not turn into a fetish for non-precedence with the federal Alphonse endlessly insisting that the state Gaston pass first through the doorway without regard for Gaston's wishes."). The Mississippi Supreme Court has made it abundantly clear in this very case that if this were raised on a post-conviction petition it would be procedurally barred. The salutary policy of reducing friction between the state and federal courts is best served in this instance by not requiring the state courts to address an issue which they have already foreclosed by barring other similarly situated issues on coram nobis. Indeed, to do so would not only reduce the friction between the state and federal courts, but indeed exacerbate it.

The instruction which the court gave in lieu of the instruction which the Defendant requested reads as follows:

You have found the defendant guilty of the crime of "Capital Murder." You must now decide whether the Defendant will be sentenced to death or to life imprisonment. In reaching your decision,

you must objectively consider the detailed circumstances of the offense for which the defendant was convicted, and the Defendant himself.

To return the death penalty, you must unanimously find from the evidence, beyond a reasonable doubt, that aggravating circumstances—those which tend to justify the death penalty—outweigh the mitigating circumstances—those which tend to justify the less severe penalty of life imprisonment.

If you unanimously find from the evidence in this case, beyond a reasonable doubt, the following aggravating circumstances:

1. The capital murder was committed while the defendant, was engaged in the commission of robbery;

2. The capital murder was committed for pecuniary gain;

3. The capital murder was committed for the purpose of avoiding lawful arrest;

4. The Capital murder was committed by the defendant while under sentence of imprisonment.

5. The capital murder was committed by the Defendant who was previously convicted of a felony involving the use of or threat of violence to the person;

6. Another Capital Murder was committed by the Defendant then you must proceed to weigh the aggravating circumstances and the mitigating circumstances, one against the other, to determine whether the aggravating circumstances, if any, outweigh the mitigating circumstances.

The mitigating circumstances which you may consider include the following:

1. Any circumstance or combination of circumstances surrounding the defendant's life and character which reasonably mitigates against imposition of the death penalty.

2. Any circumstances or combination of circumstances surrounding the offense which reasonably mitigates against imposition of the death penalty.

3. If the jury believes the defendant was an accomplice in the capital offense.

If you unanimously find from the evidence, beyond a reasonable doubt, any one or more of the aggravating circumstances listed above and, if, after weighing the mitigating circumstances and the aggravating circumstances, one against the other, you further find unanimously from the evidence beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances and that the death penalty should be imposed, your verdict shall be written on a separate sheet of paper, shall be signed by your foreman, and shall be in the following form:

"We, the jury, find unanimously and beyond a reasonable doubt the following aggravating circumstances:

(List the aggravating circumstances, if any, which you unanimously find beyond a reasonable doubt from those listed above in the same language as they are listed.)

"We, the Jury, further find unanimously from the evidence and beyond a reasonable doubt that, after weighing the mitigating circumstances and the aggravating circumstances, one against the other, that the mitigating circumstances do not outweigh the aggravating circumstances and that the defendant should suffer the penalty of death.

---

Foreman of the Jury

If you fail to find any aggravating circumstances unanimously and beyond a reasonable doubt, or, if you find one or more aggravating circumstances unanimously and beyond a reasonable doubt, but after weighing the mitigating circumstances, one against the other, you fail to unanimously find beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances, then your verdict shall be in the following form:

"We, the Jury, find that the defendant should be sentenced to imprisonment for life in the state penitentiary."

If, after reasonable deliberation, you cannot agree as to the punishment, you

should certify your disagreement to the Court and the Court shall, under the law, impose a sentence of imprisonment for life. Your verdict shall be in the following form:

"We, the Jury, after due deliberation, have been unable to agree upon the punishment and hereby so certify and request the Court to dismiss the Jury from further deliberation."

■ The jury was given three choices by this instruction. It could find that the aggravating circumstances outweighed the mitigating circumstances, that the mitigating circumstances outweighed the aggravating circumstances, or that they were unable to reach a consensus. Under the second two alternatives, a life sentence would be imposed. The wording of the first alternative includes the additional phrase "*and* that the death penalty should be imposed," which gave the jury an option of imposing the death penalty or of granting mercy even if the aggravating circumstances outweighed those which mitigated if they felt the death penalty was inappropriate. Taken as a whole, this Court cannot say that these instructions violated the requirement that instructions be clear on mitigation and the option to recommend against death. *Spivey v. Zant*, 661 F.2d 464, 470 (5th Cir.1981). This Court finds no basis for requiring the jury to specifically be instructed that they may ignore the balancing of aggravating and mitigating circumstances and vote for life imprisonment based on their decision to be merciful.

## VI.

■ The Petitioner's sixth ground upon which he requests this Court to issue a writ of habeas corpus involves the fact that two separate aggravating circumstances may be found based on the same set of facts. In this case the jury found the following aggravating circumstances: (1) the capital murder was committed while the Defendant was engaged in the commission of a robbery; (2) the capital murder was committed for pecuniary gain; (3) the capital murder was committed for the purpose of avoiding lawful arrest; (4) the capital murder was committed by the Defendant while

under sentence of imprisonment; (5) the capital murder was committed by the Defendant who was previously convicted of a felony involving the use or threat of violence to the person; (6) another capital murder was committed by the Defendant. It strains the imagination that the elimination of one of the aggravating circumstances would have made any difference to this jury. Nevertheless, the fact that the statute allows the finding of two statutory aggravating circumstances based on the single set of facts presented by this case does no violence to the requirements of the eighth amendment. The procedures used by the trial court in instructing the jury as to aggravating and mitigating circumstances comported with the constitutional requirements of imposing the death sentence. *See generally Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). The aggravating circumstances found in this case genuinely operated to narrow the class of persons eligible for the death penalty and reasonably justified its imposition. This is certainly not the case where the jury was unguided and the imposition of the death penalty could be called wanton or freakish.

## VII.

■ The seventh ground upon which the Petitioner requests this Court to grant his writ of habeas corpus is that the prosecutor introduced evidence to the sentencing jury of non-statutory aggravating circumstances that should not have been admitted under state law. The thrust of this argument is that the prosecution introduced evidence of five misdemeanors, two simple burglaries, and an escape from prison and used this as a major part of closing argument to the jury requesting the death penalty. Petitioner notes that one of the misdemeanor convictions, carrying a concealed weapon, was not his but rather that of his father, Leo E. Edwards, Sr. This is apparently the first time that the Petitioner has raised this allegation that one of the convictions introduced at the sentencing phase was not his. The Petitioner argues that these facts combine to violate the directive

of the Supreme Court in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) and its progeny. This Court is guided in its decision largely by the recent Supreme Court's decisions in *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) and *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). *Zant* held that the constitutionality of a death sentence is not impaired by the invalidity of one of several statutory aggravating circumstances found by the jury. The statutory scheme involved in the decision in *Zant* did not utilize aggravating circumstances to guide the sentencing body, but rather functions to narrow the class of persons eligible for the death penalty. As the court stated in *Zant*

> Our cases indicate ... that statutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty. But the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death. What is important at the selection stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime. (citations omitted).

*Zant,* 462 U.S. at ——, 103 S.Ct. at 2743–2744, 77 L.Ed.2d at 250–51.

In *Barclay* the Supreme Court upheld a death sentence despite the trial court's consideration of the prior record of the accused which consideration was in violation of state law. In ruling in this fashion a plurality of the court speaking through Justice Rehnquist found no constitutional infirmity in considering the defendant's criminal record where it was not a statutory aggravating circumstance. The court focused the issue stating that the question "is whether the trial judge's consideration of this improper aggravating circumstances so infects the balancing process created by the Florida statute that it is constitutionally impermissible for the Florida Supreme Court to let the sentence stand."

*Barclay,* 463 U.S. at ——, 103 S.Ct. at 3427–3428, 77 L.Ed. at 1148. Under the Florida scheme for capital punishment the criminal record is not a statutory aggravating circumstance and Florida Law prohibits consideration of non-statutory aggravating circumstances.

While the Petitioner here raises some question as to the accuracy of one of the convictions which was introduced, this is one of many convictions which were presented to the jury for their consideration with regard to sentencing the Defendant Edwards. This Court feels that *Barclay* and *Zant* sufficiently indicate the parameters of the constitutional requirements at the sentencing phase with regard to introduction of non-statutory aggravating circumstances. This Court is bound thereby and finds that the Petitioner has failed to raise a claim cognizable under the Constitution. The death penalty cases decided by the Supreme Court were not intended to set forth a rigid procedure for sentencing capital murder defendants. The Petitioner's constitutional rights were not violated by the introduction of his criminal record even though such may have been a breach of state law. The request to grant relief based on this allegation must therefore be denied.

## VIII

The eighth ground upon which the Petitioner bases his argument for the granting of the writ of habeas corpus is that the prosecutor's argument to the sentencing jury was so inflammatory as to deprive the Petitioner of a fundamentally fair trial. The inquiry of this Court must be whether the alleged impropriety "so infected the entire trial that the resulting conviction violates due process." *O'Bryan v. Estelle,* 714 F.2d 365, 389 (5th Cir.1983) (citations omitted); *Lowery v. Estelle,* 696 F.2d 333, 343 (5th Cir.1983) (closing argument not suited to circumstances, but not violation of constitutional principals of fundamental fairness of the trial as a whole).

While the arguments of the prosecuting attorney should not be condoned in that

misstatements of fact were presented to the jury, this Court cannot say that the constitutional rights of the Petitioner were violated considering the trial as a whole. The prosecution's argument falls far short of the egregious case presented to the court in *Houston v. Estelle,* 569 F.2d 372, 377–84 (5th Cir.1978). In *Houston* the prosecutor repeatedly engaged in impermissible argument even after the defendant had objected and the court had sustained the objection. While the prosecutor's arguments in this case may have been unsavory in some respects, they did not cross over sufficiently into the impermissible so as to sustain a claim of constitutional proportions. Accordingly, the Petitioner's request for a writ of habeas corpus on this ground must be denied.

## IX

 The Petitioner next raises the exclusion on hearsay grounds of testimony that was relevant to the issue of mitigation as a ground for granting the Petitioner's writ of habeas corpus. The Supreme Court most recently addressed this question in *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). In *Eddings* the Supreme Court reversed a sentence of death for a crime committed by a sixteen year old youth where the state court had held that as a matter of law that the jury could not consider the violent and abusive family background of the defendant. The holding of the Supreme Court is an affirmation of their holding in *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), in that "the sentencer [may not] refuse to consider, *as a matter of law,* any relevant mitigating evidence." *Eddings,* 455 U.S. at 114, 102 S.Ct. at 877.

At the sentencing stage of the trial the attorney for Edwards attempted to elicit hearsay testimony from a priest called as witness. The attorney also attempted to elicit opinions without laying proper foundations upon which to base those opinions. Read as a whole, it is clear that the trial judge did not limit the evidence which the Defendant could put on in mitigation, but rather was simply ruling on elementary principles of evidence in not allowing a witness to repeat self-serving statements made by the Defendant to the witness while the Defendant was not under oath or subject to cross examination. The trial judge allowed the priest's testimony about his mental impressions and observations of the Defendant. It is clear from reading the record that the trial judge tried to explain to the attorney for the Defendant the reason and scope of his ruling.

This Court finds nothing unfair or limiting in the trial judge's rulings as to evidentiary questions during the sentencing phase. Accordingly, this Court finds that the Petitioner's constitutional rights were not violated by the trial judge in limiting his presentation of mitigating circumstances. The trial judge was doing no more than following well established rules of evidence. This argument must fail as a ground for granting the Petitioner's writ of habeas corpus.

The state has raised the fact that this ground was not asserted either on direct appeal or in the Petitioner's post conviction proceedings in state court. For a discussion of this issue *see* V *supra.*

## X.

 The Petitioner next asserts that the Mississippi capital murder statute is unconstitutional by its terms in that it allows the death penalty to be imposed without a finding of intent to kill. In this case the jury found that the capital murder was committed for pecuniary gain and for the purpose of avoiding lawful arrest. These two aggravating circumstances found by the jury put to rest any theory that Mr. Edwards was not found to have intentionally murdered. Accordingly, this case falls within the Fifth Circuit's holding in *Gray v. Lucas,* 685 F.2d 139, 140 (5th Cir.1982). In that case the Fifth Circuit held that they need not address Gray's attack on the constitutionality of the Mississippi capital murder statute because this case does not present a situation where the jury convicted without a finding of intent.

Accordingly, this ground will not support the issuance of a writ of habeas corpus.

## XI.

The eleventh ground upon which the Petitioner requests this court to issue a writ of habeas corpus is that the Mississippi Supreme Court's proportionality review was unconstitutionally deficient in Edwards' case. This has been answered by the United States Supreme Court in *Pulley v. Harris,* —— U.S. ——, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). The United States Supreme Court decided in *Pulley v. Harris* that the eighth and fourteenth amendments do not require the states to conduct proportionality review of the defendant's sentence. *See Moore v. Maggio,* 740 F.2d 308, 320 (5th Cir.1984). Accordingly, this Court denies any relief based on the lack or deficiency of the proportionality review of the Mississippi Supreme Court.

## XII.

This Court has already extensively dealt with the Petitioner's arguments relative to the application of the procedural bar by the Mississippi Supreme Court. This Court has granted relief to the Petitioner to the extent that the merits of his petition have been considered at length without regard to the independent and adequate procedural grounds which would otherwise bar review.

## XIII.

Finally, the Petitioner raises as his last ground for granting the writ of habeas corpus that his counsel was ineffective and he was accordingly denied his rights pursuant to the Sixth Amendment. The United States Supreme Court has recently addressed this specific issue in *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The United States Supreme Court in *Washington* held that specific guidelines for determining whether or not a defendant was denied effective assistance of counsel are not appropriate. The reasonableness of counsel's challenged conduct with regard to a particular case must be reviewed as of the time of the counsel's conduct. The petitioner must identify the acts or omissions "that are alleged not to have been the result of reasonable professional judgment." *Wash-ington,* —— U.S. at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

The Petitioner's allegation of ineffective assistance of counsel is directed both at the performance of the defense attorney in light of the changed procedural rules of the Mississippi Supreme Court and his failure to investigate the one plausible line of defense available to the Petitioner. As for the first proposition, this Court has substantially redressed any potential ineffectiveness that may have been present because of the failure of the Petitioner's attorney to raise all available constitutional claims on direct appeal to the Mississippi Supreme Court. As for his failure to investigate the one plausible line of defense, this Court has reviewed the trial record and the arguments of the attorneys in this case as well as the Supreme Court's decision in *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Considering as a whole the defense attorney's performance this Court finds no substantial issue is raised as to the attorney's judgment. As the court said in *Strickland v. Washington,*

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

*Strickland v. Washington,* —— U.S. at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695–696.

The case before this Court does not present a situation where the identified omissions of the Petitioner's attorney were outside of the "wide range of professionally competent assistance." *Id.* Additionally, the Supreme Court placed on a habeas corpus petitioner the affirmative obligation of showing prejudice, namely, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington,* —— U.S. at ——, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. The Petitioner's attorney conducted the defense in a manner which was strategically in the best interest of the Defendant. These strategic judgments will not be second guessed by this court where they were reasonable at the time of the trial. This Court, having reviewed the record, is convinced that the trial of this Defendant was fundamentally fair and that the result was dictated by overwhelming evidence of guilt and culpability on the part of the Defendant.

The defense attorney's failure to put Mr. Edwards on the stand in his own defense is no doubt directly related to the extremely damaging testimony which would come out on cross-examination of Mr. Edwards. No prosecutor would forego the opportunity to take advantage of a defendant in a situation such as that would present.

In summary, it is the considered opinion of this Court that no substantial claim is raised as to the assistance which Mr. Edwards had at the trial of his case. Accordingly, relief on this basis must be denied.

## CONCLUSION

This Court has considered whether this case presents any claims which should be accorded an evidentiary hearing and has decided against such. All of the claims presented are resolved on the basis of legal issues without the need of holding an evidentiary hearing. These issues have been exhaustively briefed and this Court, having considered all of the grounds raised, is of the opinion that even though the merits were reached because of this Court's decision with reference to the Mississippi Supreme Court's invocation of novel procedural rules retroactively applied, that this along with the transcript of the proceedings in the state courts provide ample information upon which this Court may base its decision.

In accordance with the above, this Court finds that the Petition for a Writ of Habeas Corpus must be denied and the stay of execution which this Court entered on August 1, 1983, is hereby dissolved.